SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
WILLIAM GRAY (*Pro Hac Vice*)
wgray@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| WILLIAM FARRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPENTABLE, INC., a Delaware corporation, d/b/a OpenTable.com,<br><br>Defendant. | No. CV 11-1785 SI<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Location: Courtroom 10, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br>Date: September 22, 2011<br>Time: 9:00 p.m.<br><br>Honorable Susan Illston |

1

**NOTICE OF MOTION**

2      NOTICE IS HEREBY GIVEN that the Plaintiff will move the Court, pursuant to Federal

3   Rule of Civil Procedure 23(e) to grant preliminary approval of the proposed class action

4   settlement entered into by the parties on September 22, 2011 at 9:00 A.M., or at such other time as

5   may be set by the Court, at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 10,

6   Nineteenth Floor, before the Honorable Susan Illston.

7      Plaintiff seeks preliminary approval of this class action settlement, certification of the

8   proposed Class, appointment of the Plaintiff as Class Representative, and appointment of his

9   counsel as Class Counsel. The Motion is based on this Notice of Motion, the Brief in Support of

10  the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any

11  other matter that may be submitted at the hearing.

12  Dated: September 16, 2011                  Respectfully Submitted,

13

14                                            WILLIAM FARRELL, individually and on
                                              behalf of a class of similarly situated individuals,
15

16

17        /s/ William C. Gray

18

19                                            JAY EDELSON (*Pro Hac Vice*)
                                              jedelson@edelson.com
20                                            WILLIAM GRAY (*Pro Hac Vice*)
                                              wgray@edelson.com
21                                            EDELSON MCGUIRE, LLC
                                              350 North LaSalle, Suite 1300
22                                            Chicago, IL 60654
                                              Telephone: (312) 589-6370
23                                            Facsimile: (312) 589-6378
                                              ATTORNEYS FOR PLAINTIFF

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table of Contents

I.    **NATURE OF THE LITIGATION** ......................................................... 2

     **A.**   **Summary of the Litigation, Mediation & Settlement** ............... 2

     **B.**   **OpenTable's Position** ......................................................... 3

II.    **TERMS OF THE SETTLEMENT** ................................................... 4

     **A.**   **Class Definition** ............................................................... 4

     **B.**   **Prospective Relief** .......................................................... 4

         **1.**   *All Future OpenTable Deals Will Now Allow Consumers to Redeem the Purchase Price Of Their Deal for the Minimum Period of Expiry Required by Law* ....................................................... 4

         **2.**   *Guaranteed Refund for Consumers Directly from OpenTable* ......... 5

         **3.**   *Consumers Will be Alerted of Their Enhanced Rights and to the Changes in OpenTable's Terms and Conditions* ....................... 5

     **C.**   **Direct Relief** .................................................................. 6

     **D.**   **Other Relief** .................................................................. 7

         **1.**   *Payment of Notice and Administrative Fees* ......................... 7

         **2.**   *Compensation for the Class Representative* ......................... 7

         **3.**   *Payment of Attorneys' Fees and Expenses* ......................... 7

     **E.**   **Release** ......................................................................... 7

III.   **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED** ............. 8

     **A.**   **The Requirement of Numerosity is Satisfied** ..................... 8

     **B.**   **The Requirement of Commonality is Satisfied** ................... 9

     **C.**   **The Requirement of Typicality is Satisfied** ...................... 10

     **D.**   **The Requirement of Adequate Representation is Satisfied** ....... 10

     **E.**   **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)** ........ 11

         **1.**   *Common Questions of Law and Fact Predominate* ................. 11

         **2.**   *This Class Action is the Superior Method of Adjudication* ......... 12

IV.   **THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL** ................................................................. 12

**V.     THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL** ........................................................................ 13

**VI.    THE PROPOSED PLAN OF CLASS NOTICE** .................................... 15

**VII.   CONCLUSION** ................................................................................. 17

## Table of Authorities

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 8,11,12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................ 15, 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ----, 2011 WL 2437013 (June 20, 2011) ............... 9, 10

**United States Circuit Court of Appeals Cases:**

*Blake v. Arnett*, 633 F.2d 906 (9th Cir. 1981) ................................................. 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................. 9, 10, 11, 14

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................ 14

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ............................... 13, 14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................... 14

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ....................................... 9

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) ................................. 11

*Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168 (9th Cir. 2010) ............... 10, 12

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ..................... 11

**United States District Cases:**

*CE Design v. Beaty Constr. Inc.*, 2009 WL 192481 (N.D. Ill. 2009) ......................... 12

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ............................ 8

*In re Indep. Energy Holdings PLC*, 2003 WL 22244676 (S.D.N.Y 2003) ..................... 14

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............... 13, 14

*Kramer v. Autobytel*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) ............................... 11

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) ............. 11

*Satterfield v. Simon & Schuster*, 2007 WL 1839807 (N.D. Cal. 2007). ..................... 11

*Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) ......................... 8

**Statutes:**

Fed. R. Civ. P. 23 ................................................................................................*passim*

15 U.S.C. §1693, *et seq.* ...................................................................................... 1

28 U.S.C § 1715 ...................................................................................................... 17

Credit Card Accountability Responsibility and Disclosure Act,
PL 111-24, 123 Stat 1734 (2009) ......................................................................... 1,4

Cal. Bus. & Prof. Code § 17200 ........................................................................... 1

Cal. Civ. Code § 1749.5 ......................................................................................... 1

**Miscellaneous:**

32 A.L.R. Fed. 102 (Originally published in 1977) ............................................. 16

Conte & Newberg, 4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ................... 13, 14, 15

MANUAL FOR COMPLEX LITIGATION (3d ed. 1995) ............................................. 13

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ............................................. 8, 13

The "daily deal" sales phenomenon has changed the way people acquire everyday purchases—from haircuts to meals.  Plaintiff contends, however, that it has also spawned a problem whereby consumers are forced to accept significantly shorter periods of expiry than are required under the law. This lawsuit involves allegations that OpenTable, Inc. ("OpenTable"), through the sale of its Spotlight Deals ("Deals"), engaged in the sale of gift certificates containing expiration periods shorter than mandated under California Civil Code Section 1749.5 ("California Gift Card Law"), the Credit Card Accountability Responsibility and Disclosure Act, PL 111-24, 123 Stat 1734 (2009) ("CARD Act") as it is incorporated into the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* Plaintiff further alleged violations of California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code Section 17200, and brought common law claims under breach of contract and unjust enrichment. This settlement, if approved, will result in full relief to the proposed Class in the form of millions of dollars of revived Deals, that otherwise expired or would have expired, for all of OpenTable's customers. (*See* a copy of the Class Action Settlement Agreement attached hereto as Exhibit 1 & Declaration of William C. Gray ¶ ¶ 5, 10 attached hereto as Exhibit 2) ("Gray Decl").

Plaintiff William Farrell, having himself purchased a Deal ticket ("ticket") containing an expiration date allegedly shorter than required by law sold by OpenTable, filed this class action. On May 23, 2011, proposed Class Counsel and OpenTable engaged in a mediation with the respected neutral Barbara Reeves Neal of JAMS. After several rounds of arm's length negotiations, and with the assistance of the mediator, the Parties were able to agree on the principle terms of a settlement agreement. In the several months thereafter, counsel for the parties continued to negotiate the detailed terms of the executed Class Action Settlement Agreement ("Settlement Agreement").

The resultant settlement is an exceptional result for the members of the proposed Class. The Settlement Agreement creates millions of dollars in resuscitated Deals that previously expired or would have expired in the future. (*See* Gray Decl. ¶¶ 5, 10). The Settlement Agreement additionally provides for wide-spanning prospective relief requiring OpenTable, individually and via modifications of the contracts with its business partners, to ensure that consumers are not sold

1  Deal tickets that contain an unlawful period of expiry. (Ex. 1, 2.2 (b)).

2      The results achieved by the Settlement Agreement are well beyond those required for

3  preliminary approval. Plaintiff thus moves the Court to preliminarily approve the instant

4  Settlement Agreement, certify the proposed Class, and appoint Jay Edelson and William C. Gray

5  as Class Counsel. For convenience, proposed dates and deadlines leading to a final approval

6  hearing are provided in the proposed order separately submitted to the Court.

7  **I.     NATURE OF THE LITIGATION**

8      **A.     Summary of the Litigation, Mediation & Settlement**

9      On April 12, 2011, Plaintiff William Farrell brought this class action in the United States

10  District Court for the Northern District Court of California alleging that OpenTable sold gift

11  certificates with unlawful expiration periods. (Dkt. 1). By way of background in 2010, OpenTable

12  launched its Spotlight Deal program that offers consumers the opportunity to purchase tickets

13  whereby consumers pay OpenTable monies for vouchers that can be redeemed at restaurants

14  throughout the country. After receiving complaints from consumers about OpenTable's Spotlight

15  Deal tickets in or around September of 2010, Plaintiff's counsel embarked on an extensive

16  investigation, including speaking to and/or reviewing complaints from numerous class members.

17  (Ex. 1 & Gray Decl. ¶¶ 2-3). As part of their investigation, Plaintiff's counsel also shared the

18  results of their investigation with OpenTable in or around February of 2011. (Ex. 1 & Gray Decl. ¶

19  3). The Parties exchanged their respective views and OpenTable denied that its Deal tickets are

20  gift certificates or that it misled anyone and/or broke any laws. (*Id.*)

21      The filing of the complaint reopened a dialogue between the Parties. (Gray Decl. ¶ 4).

22  These preliminary discussions revealed that a negotiated resolution was in the best interests of

23  OpenTable's customers and OpenTable. (*Id.*) The Parties attempted to work through their

24  disagreements over several months, but were ultimately unsuccessful in reaching a complete

25  agreement on many of the necessary terms. (*Id.*)  The Parties decided that the involvement of a

26  neutral was their best chance at resolution. Proposed Class Counsel, along with OpenTable's

27  Counsel, engaged in a mediation on May 23, 2011, with neutral Barbara Reeves Neal of JAMS.

28  (*Id.*) Mediator Neal presided over a mediation between the Parties, consisting of arm's length

negotiations over numerous issues. (*Id.*) The result of these negotiations was an agreement as to many of the principal terms of the Settlement, which provides complete relief for individual Class Members, as well as exceptional prospective relief to the entire Class. (Ex. 1 & Gray Decl. ¶¶ 4, 10). At the conclusion of the mediation, and with the informed consent of Plaintiff Farrell, the terms were formalized in a signed Settlement Agreement. (Ex. 1 & Gray Decl. ¶ 4).

This proposed Settlement results in millions of dollars of Deals being resuscitated that have or would have expired. (Gray Decl. ¶5). Absent this Settlement, the Class would be left with pieces of paper that are unredeemable after the stated date of expiration has passed. (Dkt 1). By way of representative example, Plaintiff Farrell's Spotlight Deal, for which he paid twenty-five dollars ($25.00) for food at the Elephant Walk, a restaurant specializing in Cambodian food, will be unredeemable in approximately three months. (*Id.*) The expiration period on this Deal is only one (1) year, a time length shorter than both the requirements of the federal CARD ACT (five years) and the California Gift Card Law (no expiration periods allowed). (*See* California Gift Card Law & CARD Act). Instead, should this proposed Settlement be approved, as discussed more fully below and in the Settlement Agreement, Deals that have expired or would expire, will now be resuscitated and all consumers will be able to use the full value that they paid for their Deals in accordance with the law. (*See* Ex. 1). The Parties now seek preliminary approval of this Settlement Agreement.

### B.    OpenTable's Position

At all times, OpenTable denied and continues to deny any wrongdoing whatsoever, related to those claims alleged in the complaint. (Dkt. 1 & Ex. 1, Recital F). OpenTable also denies: (1) that the CARD Act and California's Gift Card Law apply to its Spotlight Deals, or any certificates, vouchers, tickets, or receipts issued pursuant to a Spotlight Deal; (2) all charges of wrongdoing or liability against it arising out of any conduct, statements, acts or omissions alleged in the complaint; and (3) that Plaintiff or the Settlement Class are entitled to any form of damages based on the conduct alleged in the complaint. (*Id.*) In addition, OpenTable maintains that it has meritorious defenses to the claims alleged in the complaint and was prepared to vigorously defend itself. (*Id.*) Nonetheless, taking into account the uncertainty and risks inherent in any litigation,

1  OpenTable has concluded that further defense in this matter would be protracted, risky,

2  burdensome, and expensive, and that it is desirable and beneficial to it that the case be fully and

3  finally settled and terminated in the manner and upon the terms and conditions set forth in the

4  Settlement Agreement. (*Id.*)

5  **II.      TERMS OF THE SETTLEMENT**

6          The terms of the Settlement are set forth in the Settlement Agreement and briefly

7  summarized as follows:

8          **A.      Class Definition**

9          The Settlement Agreement provides for a Settlement Class defined as follows:

10                 All Persons residing in the United States of America who
                   purchased a Spotlight Deal or otherwise received an OpenTable
11                 Ticket for a Spotlight Deal prior to the date of Preliminary
                   Approval of this Settlement.
12

13  (Ex. 1, § 1.25)

14          **B.      Prospective Relief**

15          At all times during settlement negotiations, Plaintiff and proposed Class Counsel

16  maintained that any class settlement agreement would need to include prospective relief primarily

17  designed to change OpenTable's manner of doing business and ensure that OpenTable's

18  customers would be able to get value for the Deals that they purchased for the entirety of time

19  required by law. (Ex. 1, § 2.2; *see also* Gray Decl. ¶ 8). The instant Settlement Agreement

20  includes such provisions. (Ex. 1, § 2.2).

21          **1.      *All Future OpenTable Deals Will Now Allow Consumers To Redeem
                      The Purchase Price Of Their Deal For The Minimum Period of Expiry
                      Required By Law***
22

23          OpenTable has consented to change the manner of issuance of its Spotlight Deals so that

24  all future deals will allow consumers to redeem the purchase price of the Deal for the expiry

25  period required by law applicable to gift certificates. (*Id.)* Plaintiff contends that consumers

26  routinely were forced to accept expiration periods of length much shorter than five (5) years, the

27  length of expiration required by the CARD Act. (*See* CARD Act). As a result of this Settlement,

28  for each Deal now offered to consumers by OpenTable, each restaurant ("Restaurant") is

1  contractually required to allow consumers to redeem the purchase price of unredeemed Deals for

2  the amount of time required by the relevant gift certificate law. (Ex. 1, § 2.2(a)). Further,

3  OpenTable will require that Restaurants not impose any post-contractual charges or fees on

4  consumers redeeming their Deals. (Ex. 1, § 2.2(b)).

5          **2.**     ***Guaranteed Refund for Consumers Directly from OpenTable***

6        The proposed Settlement goes even further in assuring that consumers are guaranteed to

7  redeem their full purchase price for the time required by law. If a Restaurant improperly refuses to

8  honor the purchase price of the Deal for the minimum amount of time required by law, OpenTable

9  will refund the consumer the full amount of their purchase price. (Ex. 1, §§ 1.22 & 2.2(e)). Under

10  the terms of the Settlement, if a consumer visited a Restaurant and the Restaurant has refused to

11  redeem the purchase price of the Deal with a printed expiration date that is in the past, and it has

12  not been either (a) five years from the date of the Spotlight Deal's purchase, or (b) the time

13  allowed for expiring gift certificates or gift cards in the state of the Restaurant's location has not

14  yet passed, then the consumer may contact OpenTable and make a refund request. ("Refund

15  Request"). *Id.* After the submission of a Refund Request, along with reasonable verifying

16  information, OpenTable will refund the purchase price of the Deal in either U.S. Dollars or credit

17  for purchases of future Deals from OpenTable. *Id.*

18          **3.**     ***Consumers Will be Alerted of Their Enhanced Rights and to the Changes***

19               ***in OpenTable's Terms and Conditions***

20        The proposed Settlement also requires OpenTable to change its terms and conditions to

21  reflect the above enhancements and also to provide consumers with notice of their new rights

22  when purchasing a Deal. (Ex. 1, §§ 2.2(e)-2.2(d)). In order to register to purchase a Deal or to

23  receive email updates regarding Deals, OpenTable will require persons to "click" or "check" a box

24  accepting OpenTable's Spotlight Deal terms of sale. (*Id.*) In near proximity to the "click" or

25  "check" box, OpenTable will include a hyperlink to OpenTable's Spotlight Deal terms of sale

26  clearly explaining that consumers can now receive value for the full purchase price of their tickets

27  for the minimum amount of time now required by law. (*Id.*)

28

### C.   Direct Relief

The Settlement provides complete relief to OpenTable consumers and ensures, should this Settlement be approved, that every Settlement Class Member now possesses a Deal that can lawfully be redeemed for the full purchase price paid up until the required under the law, regardless of any previous earlier period of expiration imposed. OpenTable consumers have spent and acquired approximately $7,920,000 in Deals through June 30, 2011. (Gray Decl. ¶ 5). Previously, as alleged by Plaintiff, these Deals issued by OpenTable included expiration dates that were shorter than that required by law. (Ex. 1, §§ 1, Recitals A, C & Dkt. 1). If this Settlement is approved, these Deals that have expired or would expire, will now be resuscitated and all consumers will be able to get the full value that they paid for their Deals. (Ex. 1, § 2).

The Settlement allows Class Members to be able to use the purchase price of any Deal that they had purchased prior to Preliminary Approval of this Settlement, or make a refund request for the Deal's purchase price. (Ex. 1, § 2). Through June 30, 2011, OpenTable consumers purchased approximately 315,000 Deals. (Gray Decl. ¶ 5). Under the terms of the Settlement, if a consumer visited a Restaurant and the Restaurant refused to redeem the purchase price of the Deal with a printed expiration date that is in the past, and it has not been either (a) five years from the date of the Deal's purchase, or (b) the time allowed for expiring gift certificates or gift cards in the state of the Restaurant's location has not yet passed, then the consumer may contact OpenTable and make a Refund Request. (Ex. 1, §§ 1.22 & 2.1(d)). After the submission of a valid Refund Request, OpenTable will refund the purchase price of the Deal in either U.S. Dollars or credit for purchases of future Deals from OpenTable. (*Id*.)

Further, under the Settlement, OpenTable must contact each Restaurant for whom it has offered a Deal in the past and instruct the Restaurant that it must honor the purchase price of the Deal for the minimum amount of time required by law. (Ex. 1, § 2.1(a)). OpenTable must send electronic mail to all Settlement Class Members and inform them that each Restaurant for whom it has offered a Deal in the past must honor the purchase price of Deals for the greater of (a) five years from the date of the Deal's purchase or (b) the time allowed for expiration of gift certificates and gift cards in the state of the Restaurant's location, which ever is greater. (Ex. 1, §§ 1.21 &

2.1(b)). The electronic mail will also inform Settlement Class Members, who may have believed that their Deal's purchase price had expired and disposed of their Deal, of the process by which they can obtain a re-issued copy of their Deal so that it can be redeemed. (Ex. 1, § 2.1(c)). The electronic mail described will further disclose the process by which Settlement Class Members may make a Refund Request. (Ex. 1, § 2.1(d)).

If this Settlement is approved, Settlement Class Members will be made entirely whole, their previously expired Deals' value will be restored, and they may redeem their Deals according to the law. (Ex. 1, §§ 1.22 & 2.1(d)).

**D.    Other Relief**

In addition to the individual and prospective relief discussed above, OpenTable has agreed to the following relief:

**1.    *Payment of Notice and Administrative Fees*:** All Settlement administration expenses will be paid by OpenTable. (Ex. 1, §§ 3.3-3.5). The full notice plan is discussed *infra* in Section VI below.

**2.    *Compensation for the Class Representative*:** In addition to any award under the Settlement, and in recognition of his efforts on behalf of the proposed Class, OpenTable has agreed to pay, subject to approval of the Court, an incentive award of $1,600. (Ex. 1, § 6.3).

**3.    *Payment of Attorneys' Fees and Expenses*:** Under the Settlement Agreement, OpenTable has agreed that proposed Class Counsel is entitled to reasonable attorneys' fees and does not oppose proposed Class Counsel's request, subject to Court approval, for up to $425,000 for attorneys' fees and reimbursement of expenses if proposed Class Counsel limits their request to this amount. (Ex. 1, § 6.1).

**E.    Release**

In exchange for the relief provided above, and upon the entry of a final order approving this Settlement, OpenTable and each of its related affiliates and entities will be released from any claims, whether known or unknown, that were or could have been alleged in this matter, including, but not limited, to claims regarding OpenTable's Spotlight Deals and/or Tickets. (*See* Ex. 1, §§ 1.23-1.25, 1.3, & 4.1-4.2 for the full release).

III.    **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

Before granting preliminary approval of a settlement, the Court should determine that the proposed Settlement Class is proper for settlement purposes, and thus appropriate for certification. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a class is proper when the plaintiff demonstrates that the proposed class and proposed class representative meet the following prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1-4).

In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class certification must also meet at least one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23(b); *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981). Where, as here, a plaintiff seeks certification under Rule 23(b)(3), he or she must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16; *Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356, 364-65 (N.D. Cal. 2010). The Court should accept the allegations of the plaintiff's complaint as true, but may consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007). In this case, Plaintiff meets each of the prerequisites for the certification of the Settlement Class in the Settlement Agreement.

A.      **The Requirement of Numerosity is Satisfied**

The first prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no "specific" number required, nor is the plaintiff required to state the "exact" number of potential class members. *Celano*, 242 F.R.D. at 548. Generally, the numerosity requirement is satisfied when the class comprises 40 or more members. *See id.* at 549.

Here, the proposed Settlement Class purchased approximately 315,000 Deals as of June 30, 2011. (Gray Decl. ¶ 5). Associated with the Deals purchased to date are approximately 175,000 unique email addresses belonging to Class members, which more than satisfies the numerosity requirement. (Gray Decl. ¶ 5). Accordingly, the proposed Class is so numerous that

1 joinder of their claims is impracticable.

2 **B.    The Requirement of Commonality is Satisfied**

3 The second threshold to certification requires that "there are questions of law or fact

4 common to the class." Fed. R. Civ. P. 23(a)(2). Commonality may be demonstrated when the

5 claims of all class members "depend upon a common contention" and "even a single common

6 question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ----, 2011 WL 2437013, *7, 11 (June

7 20, 2011); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) ("[t]he

8 existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

9 of salient facts coupled with disparate legal remedies within the class").  The common contention

10 must be of such a nature that it is capable of class wide resolution, and that the "determination of

11 its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

12 one stroke."  *Wal-Mart,* 2011 WL 2437013 at *7. Moreover, the permissive standard of

13 commonality provides that "[w]here the circumstances of each particular class member vary but

14 retain a common core of factual or legal issues with the rest of the class, commonality exists."

15 *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

16 In the instant case, all members of the proposed Settlement Class purchased an OpenTable

17 Deal, that allegedly contained an unlawful expiration period. These allegations resulted in each

18 member of the Settlement Class sharing common statutory claims under the California Gift Card

19 Law, the CARD Act, EFTA, and the UCL, as well as claims for breach of contract and unjust

20 enrichment. These common claims likewise result in common and shared factual and legal

21 questions such as: (a) whether the California Gift Card Law and the CARD Act apply to

22 OpenTable Spotlight Deal tickets—i.e., whether Spotlight Deal tickets are gift certificates; (b)

23 whether OpenTable sold gift certificates to members of the Settlement Class containing an

24 expiration date in violation of Federal and/or California law; (c) whether OpenTable's practices

25 violate Federal and/or California law; (d) whether OpenTable's practices violate the public policy

26 of the State of California; (e) whether OpenTable was unjustly enriched as a result of receiving

27 payments from Plaintiff and the Settlement Class; and (f) whether the Settlement Class is entitled

28 to relief, and the nature of such relief. In accordance with the Supreme Court's recent holding in

1   *Wal-Mart,* the determination of these legal issues would resolve the claims of all members of the

2   Class in one stroke. *Wal-Mart,* 2011 WL 2437013 at *7. Considering the common nature of the

3   issues and facts that bind the Class together, the element of commonality is satisfied.

4   **C.       The Requirement of Typicality is Satisfied**

5   Rule 23 next requires that the representative plaintiff's claims are typical of those of the

6   putative class or classes he or she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality

7   requirement ensures that "the interest of the named representative aligns with the interests of the

8   class." *Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

9   Typicality is measured under a permissive standard and does not require that the representative's

10  claims be substantially identical, but only that they are "reasonably coextensive with [the claims]

11  of absent class members." *Hanlon*, 150 F.3d at 1020.

12  In the instant action, allegedly illegal gift certificates were sold to Plaintiff Farrell and the

13  members of the Settlement Class by OpenTable. As a result, Plaintiff and the proposed Class have

14  alleged that this conduct violated the California Gift Card Law, the CARD Act, EFTA, the UCL,

15  and also constituted breach of contract and unjust enrichment, all of which would provide identical

16  damages to all members of the proposed Class. (Dkt 1). Plaintiff Farrell's representation of the

17  proposed Class is appropriate because he purchased and received an OpenTable Deal ticket

18  allegedly containing an expiration date short of the statutorily-required time period, qualifying him

19  as a member of the proposed Settlement Class. As such, Farrell's claim for relief is typical, if not

20  wholly identical to those of the proposed Class, and 23(a)(3)'s requirement for typicality is met.

21  **D.       The Requirement of Adequate Representation is Satisfied**

22  The final Rule 23(a) prerequisite requires that the proposed class representative has and

23  will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

24  To determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs

25  and their counsel have any conflicts of interest with other class members and (2) will the named

26  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150

27  F.3d at 1020.

28  Plaintiff Farrell's interests are entirely representative of and consistent with the interests of

the Class—all having allegedly received Deal tickets containing illegal expiration dates, sold by OpenTable. (Dkt. 1). Further, Plaintiff's active participation in this litigation, from diligently and actively assisting in the investigation of this case to participating in the process resulting in the Settlement Agreement, demonstrates he has and will continue to protect the interests of the proposed Class. (Gray Decl. ¶ 4).

Further, proposed Class Counsel has regularly engaged in major complex litigation, and has extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present case. (Gray Decl. ¶ 6; *see also Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-6344 (N.D. Ill. 2011); *Satterfield v. Simon & Schuster*, No. 06-cv-2893 (N.D. Cal 2009); *Kramer v. Autobytel,* No. 10-cv-02722 (N.D. Cal 2010) and Firm Resume of Edelson McGuire, LLC, a copy of which is attached to the Gray Decl. as Exhibit A). Both Farrell and Class Counsel will adequately represent the proposed Class and their interests.

**E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

Once the prerequisites of Rule 23(a) have been met, plaintiff must also demonstrate one of the three requirements of Rule 23(b) in order to certify the proposed class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. County of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022.

**1.     *Common Questions of Law and Fact Predominate***

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon* 150 F.3d at 1022. The common

1  legal and factual issues predominate in the instant matter as they all center on one issue—the

2  expiration period of OpenTable's Spotlight Deals. (Dkt. 1 & *see CE Design v. Beaty Constr. Inc.,*

3  2009 WL 192481, *8-9 (N.D. Ill. Jan. 26, 2009)).

4      In this case, the core issues of fact and law that predominate are whether OpenTable's

5  Spotlight Deals are gift certificates, and if they are, if the Deals contained expiration dates that

6  were shorter than required by law. (Dkt. 1).  As such, the answers to these common questions that

7  resulted from OpenTable's alleged conduct are the primary focus and central issue of this class

8  action and thus predominate over any individual issues that may exist.

9              **2.       *This Class Action is the Superior Method of Adjudication***

10     The certification of this suit as a class action is superior to any other method available to

11  fairly, adequately, and efficiently resolve the claims of the members of the Class. The purpose of

12  the superiority requirement is one of judicial economy and assurance that a class action is the

13  "most efficient and effective means of resolving the controversy."  *Wolin*, 617 F.3d at 1175-76.

14  Absent a class action and considering the fact that the Class includes well in excess of 100,000

15  people, most members of the proposed Class would find the cost of litigating their claims to be

16  prohibitive and such an influx of individual actions would be judicially inefficient. Also, because

17  the action will now settle, the Court need not consider issues of manageability relating to trial. *See*

18  *Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class

19  certification, a district court need not inquire whether the case, if tried, would present intractable

20  management problems, for the proposal is that there be no trial"). Accordingly, common questions

21  predominate and a class action is the superior method of adjudicating this controversy.

22  **IV.     THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS
            COUNSEL**

23

24     Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must

25  fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making

26  this determination, the Court must consider counsel's: (1) work in identifying or investigating

27  potential claims; (2) experience in handling class actions or other complex litigation, and the types

28  of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to

1   representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

2          As discussed above, proposed Class Counsel has extensive experience in prosecuting

3   similar class actions and other complex litigation. (Gray Decl. ¶ 6). Further, proposed Class

4   Counsel has diligently investigated and prosecuted this matter, dedicating substantial resources to

5   the investigation of the claims at issue in the action, and have successfully negotiated the

6   settlement of this matter to the benefit of the Class. (Gray Decl. ¶¶ 2, 6-10). Accordingly, the

7   Court should appoint Jay Edelson and William C. Gray of Edelson McGuire, LLC as Class

8   Counsel.

9   **V.      THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE,**
            **AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL**
10
           After certifying the proposed class for the purpose of settlement, the Court should
11
    preliminarily approve the settlement. The procedure for review of a proposed class action
12
    settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* CONTE &
13
    NEWBERG, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 3839 (4th ed. 2002). The first step is a
14
    preliminary, pre-notification hearing to determine whether the proposed settlement is "within the
15
    range of possible approval." NEWBERG, §11.25, at 3839 (*quoting* MANUAL FOR COMPLEX
16
    LITIGATION §30.41 (3d ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008);
17
    *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). This hearing is not
18
    a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the
19
    putative class members of the proposed settlement and to proceed with a fairness hearing. *In re*
20
    *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Notice of a settlement should be sent where
21
    "the proposed settlement appears to be the product of serious, informed, non-collusive
22
    negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class
23
    representatives or segments of the class, and falls within the range of possible approval." *Id.*
24
           The Manual for Complex Litigation characterizes the preliminary approval stage as an
25
    "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of
26
    written submissions and informal presentation from the settling parties. MANUAL FOR COMPLEX
27
    LITIGATION § 21.632 (4th ed. 2004). If the Court finds a settlement proposal "within the range of
28

possible approval," it then proceeds to the second step in the review process—the final approval hearing. NEWBERG, §11.25, at 3839.

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor,* 516 F.3d at 1101 (*citing Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A settlement negotiated with the assistance of an experienced private mediator is further proof that that the settlement was reached fairly and provides adequate relief. *In re Indep. Energy Holdings PLC*, 00 CV 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). Ultimately, the court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

There is little question that the proposed settlement is at least "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Only after extended arm's length negotiations, including a mediation conducted under the supervision of respected neutral Barbara Reeves Neal and proceeding for several months thereafter, were the Parties able to reach the Settlement that is being presented to the Court for preliminary approval. (Ex. 1, Recital E & Gray Decl. ¶ 4). The fairness, reasonableness, and adequacy of the proposed settlement are apparent from both the substantial money relief and prospective relief being afforded to the members of the proposed Class.

As noted above, members of the proposed Class will receive the full purchase price of any prematurely expired Deal and also extends the expiration date of any Deal currently held by a Class member that will otherwise expire. (Ex. 1, §§ 1.22 & 2.1(d)). This Settlement results in complete relief to all members of the proposed Class. In addition to the individual monetary benefits, OpenTable has agreed to a broad scope of prospective relief, the crux of which restricts OpenTable and/or its business partners from issuing Deals that have expiration dates short of the

time required by law. (Ex. 1, § 2.2). OpenTable will contractually require Restaurants to honor the

purchase price paid by consumers for their Deals and provides a concrete mechanism, as described

*supra*, for consumers to get refunds from OpenTable should they experience problems redeeming

their Deals. (Ex. 1, §§ 1.22 & 2.2(e))  Further, all of OpenTable's customers will be informed of

their new benefits through a direct electronic mail message and through an update in OpenTable's

terms and conditions describing these service improvements. (Ex. 1, §§ 2.2(e)-2.2(d)).

Although Plaintiff and his counsel are confident in the strength of the claims and that they

would ultimately prevail at trial, they also recognize that litigation is inherently risky. (Gray Decl.

¶ 7). When the strengths of the Plaintiff's claim are weighed against the legal and factual obstacles

combined with the complexity of class action practice against experienced defense counsel, it is

apparent that the proposed Settlement is clearly in the best interest of members of the proposed

Class as it provides substantial and full monetary recovery and prospective relief immediately.

(Gray Decl. ¶¶ 7-10). Given the foregoing, this proposed Settlement easily falls well "within the

range of possible approval," is fair, reasonable and adequate, and should thus be preliminarily

approved.

## VI.    THE PROPOSED PLAN OF CLASS NOTICE

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides

that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best

notice practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*,

417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly says, "[t]he court must direct notice in a

reasonable manner to all class members who would be bound by a proposed settlement, voluntary

dismissal, or compromise."  Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood

by the average class member." NEWBERG, § 11:53 at 167. The substance of the notice to the

settlement class must describe the nature of the action, the definition of the class to be certified,

the class claims and defenses at issue, as well as explain that settlement class members may enter

an appearance through counsel if so desired, request to be excluded from the settlement class, and

that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23

1   (c)(2)(B).

2        In this case, the Parties have agreed to a notice plan ("Notice Plan") designed to provide

3   direct notice via electronic mail to proposed Class Members. (*See* Ex. 1, § 3.3(b)).

4   The best notice practicable, when possible, is direct, individual notice to all members who can be

5   identified through reasonable effort. *See* AMERICAN LAW REPORTS, 32 A.L.R. Fed. 102 (Originally

6   published in 1977); *see also Eisen*, 417 U.S. at 173 ("Individual notice must be sent to all class

7   members whose names and addresses may be ascertained through reasonable effort").  This Notice

8   Plan provides direct, individual notice to each identifiable member of the Settlement Class. (*See*

9   Ex. 1, § 3.3(b)).

10       Within thirty (30) days after the entry of a Preliminary Approval Order, the settlement

11  administrator, Garden City Group, ("Settlement Administrator"), will direct notice of the

12  Settlement Agreement to each Settlement Class Member. (*Id.*) The Settlement Administrator will

13  do so by disseminating the Settlement Class notice by electronic mail to any and all reasonably

14  identifiable persons who are potential members of the Settlement Class. (*Id.*) The direct notice will

15  be sent to Class Members in the same manner, electronic mail, by which OpenTable normally

16  communicates with its customers. (Ex. 1). A copy of the proposed electronic mail notice, which

17  will be electronically mailed in substantially the same form, is attached as Exhibit C to the

18  Settlement Agreement. (*See* Ex. 1, § 3.3(b) and Exhibit C to Settlement Agreement). In addition,

19  the Settlement Administrator will set up an Internet website ("Website") and post the full notice

20  ("Full Notice"). (Ex. 1, § 3.3(a) and Exhibit B to Settlement Agreement). The Full Notice will be

21  substantially similar to the form attached as Exhibit B to the Settlement Agreement. *(Id.*)

22  Additionally, the Settlement Administrator will post the Complaint on the Website and within

23  three (3) court days of when Class Counsel files a motion in support of any request for an award of

24  attorneys' fees, and/or when Plaintiff files a motion in support of any request for an incentive

25  award, such motion(s) will be posted. (Ex. 1, § 3.3(b)). The Website will be active until forty-five

26  (45) calendar days after the entry of the Final Approval Order and Judgment. (*Id.*)

27       The proposed notices are neutral in tone and neither promote nor discourage participation

28  in the Settlement. (*See* Ex. 1 and Exhibits B and C to Settlement Agreement). The notices also

1  provide the Settlement Class members with a detailed explanation of their options to allow each of

2  them to make an informed decision. (*Id.*) Given that the proposed Class Representative's interests

3  are in line with those of the Settlement Class, the expansive notice to the Class is more than

4  sufficient and is the best form practicable. The instant Notice Plan will provide direct notice to the

5  all members of the proposed Class, and will satisfy both the substantive and manner of distribution

6  requirements of Rule 23 and Due Process. The format and language of each form of notice has

7  been drafted so that it is in plain language, is easy to read, will be readily understood by the

8  members of the proposed class, and thus will satisfy the requirements of Rule 23 and Due

9  Process.[6]  (Ex. 1 and Exhibits B and C to Settlement Agreement  & Gray Decl. ¶¶ 10).

10  **VIII.   CONCLUSION**

11       For the foregoing reasons, Plaintiff respectfully asks that the Court certify the Class,

12  appoint William Farrell as the class representative, appoint Farrell's counsel as Class Counsel,

13  grant preliminary approval of the proposed Settlement Agreement, approve the form and manner

14  of notice described above, and grant such further relief the Court deems reasonable and just.

15

16

17  Dated: September 16, 2011                    Respectfully Submitted,

18

19                                              WILLIAM FARRELL, individually and on
                                                behalf of a class of similarly situated individuals,

20

21                                               /s/ William C. Gray

22

23                                              One of Plaintiff's Attorneys

24

25  _____

26       [6] OpenTable will also be sending notice to the required government officials pursuant to the
    Class Action Fairness Act, 28 U.S.C. § 1715. (Ex. 1, § 3.4). Further, OpenTable is required to

27  serve a declaration on proposed Class Counsel confirming that the Settlement Administrator
    provided the proposed Notice in accordance with the Settlement Agreement. (Ex. 1, § 3.6).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

Jay Edelson (*Pro Hac Vice*)
jedelson@edelson.com
William C. Gray (*Pro Hac Vice*)
wgray@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned certifies that, on September 16, 2011, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: September 16, 2011                                        EDELSON MCGUIRE, LLC

                                                                    By:      /s/ William C. Gray
                                                                             William C. Gray