SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

WILLIAM GRAY (Pro Hac Vice)
wgray@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| WILLIAM FARRELL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>OPENTABLE, INC., a Delaware corporation, d/b/a OpenTable.com,<br><br>    Defendant. | ) No. CV 11-1785 SI<br>)<br>) PLAINTIFF'S NOTICE OF MOTION AND<br>) MOTION FOR AWARD OF ATTORNEYS'<br>) FEES AND EXPENSES AND INCENTIVE<br>) AWARD<br>)<br>) Location: Courtroom 10, 19th Floor<br>) 450 Golden Gate Avenue<br>) San Francisco, CA 94102<br>) Date: January 20, 2012<br>) Time: 9:00 am<br>)<br>) Honorable Susan Illston |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that the Plaintiff will move the Court, pursuant to Federal Rule of Civil Procedure 23(e) to grant final approval of the settlement in this class action on January 20, 2012 at 9:00 A.M., or at such other time as may be set by the Court, at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 10, Nineteenth Floor, before the Honorable Susan Illston.

Plaintiff seeks approval of Class Counsel's request for the agreed-upon reasonable attorneys' fees and expenses, as well as Plaintiff's incentive award for serving as class representative in this matter. The Motion is based on this Notice of Motion, the authorities cited in the attached brief in support, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: November 28, 2011          Respectfully Submitted,

                                  WILLIAM FARRELL, individually and on
                                  behalf of a class of similarly situated individuals,


                                    /s/ William C. Gray


                                  WILLIAM GRAY (*Pro Hac Vice*)
                                  wgray@edelson.com
                                  EDELSON MCGUIRE, LLC
                                  350 North LaSalle, Suite 1300
                                  Chicago, IL 60654
                                  Telephone: (312) 589-6370
                                  Facsimile: (312) 589-6378
                                  ATTORNEYS FOR PLAINTIFF

**Table of Contents**

I. INTRODUCTION ................................................................................................................. 1

II. SUMMARY OF THE LITIGATION AND RESULTS OF THE SETTLEMENT .......... 2

   A. Brief Summary of the Litigation and Settlement ............................................................. 2

   B. Results Achieved By the Settlement. ............................................................................... 4

III. THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES BECAUSE THEY ARE REASONABLE .............................................. 5

   C. Class Counsel's Attorneys' Fees Analyzed by the Lodestar Method. ............................ 5

   A. The Reasonableness of Class Counsel's Lodestar Enhancement is Supported by the *Kerr* Factors. .................................................................................................................. 7

      1. The Results Obtained Were Exceptional and the Time and Labor Required Were Necessary to Achieve that Result. ................................................................... 8

      2. The Case Involved Novel Issues of Law and Presented Untested Legal Questions. ......... 9

      3. Class Counsel Skillfully Prosecuted the Action. ................................................. 10

      4. The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel Supports the Reasonableness of the Agreed-upon Fee. ........................ 10

   B. The Agreed-Upon Fee Is Reasonable When Cross-Checked Against The Percentage of the Overall Class Relief. ............................................................................ 11

IV. THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD ... 12

V. CONCLUSION .................................................................................................................. 13

**Table of Authorities**

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) .................................................................. 6

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ............. passim

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*,
   109 F.3d 602 (9th Cir. 1997) .................................................................................................. 2

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*,
   55 F.3d 768 (3d Cir. 1995) .................................................................................................... 12

*In re Mercury Interactive Corp. Securities Litigation,* 618F.3d 988 (9th Cir. 2011) ........................ 6

*In re Washington Pub. Power Supply System Securities Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................................. 11

*Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67 (9th Cir. 1975) ....................................................... 6, 8

*Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436 (9th Cir. 1983) .............................................. 8

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir.1989) ........................................... 2

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir.2003) ..................................................................... 6, 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................... passim

*Zucker v. Occidental Petroleum Corp.*,192 F.3d 1323 (9th Cir.1999) ............................................ 13

**UNITED STATES DISTRICT COURT**

*Craft v. County of San Bernardino*,
No. 08-01520, 2008 WL 916965 (C.D. Cal. April 1, 2008) ........................................................ 7 n. 6

*Edmonds v. United States*, 658 F.Supp 1126 (D.S.C. 1987) ............................................................ 10

*In re Activison Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................... 13

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ................................. 11

*In re OmniVision Techs., Inc.*, 559 F. Supp 2d 1036 (N.D. Cal. 2008) ..................................... 10, 13

*In re Trilogy Sec. Litig.*, C-84-20617(A) (N.D. Cal. 1986) ......................................................... 7 n. 6

*Keith v. Volpe*, 86 F.R.D. 565 (C.D. Cal.1980) ......................................................................... 7 n. 6

*Knight v. Red Door Salons, Inc.*,
   08-01520 SC, 2009 WL 248367 (N.D. Cal. 2009) ....................................................... 10, 11, 14

**MISCELLANEOUS**

15 U.S.C. § 1693, *et seq* ................................................................................................................ 2

Cal. Bus & Prof. Code Section 17200 ............................................................................................ 2

California Civil Code Section 1749.5 ......................................................................................... 2, 4

Credit Card Accountability Responsibility and Disclosure Act,
   PL 111-24, 123 Stat 1734 (2009) ........................................................................................... 2, 4

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d Ed. 1992) .................. 6

## I. INTRODUCTION

On September 27, 2011, this Court granted preliminary approval of this Settlement. (*See* a copy of the Class Action Settlement Agreement attached hereto as Exhibit 1; *see also* Preliminary Approval Order attached hereto as Exhibit 2; Plaintiff's Motion for Approval of Class Action Settlement attached hereto as Exhibit 3.) The final approval hearing is set for January 20, 2012. Pursuant to *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988 (9th Cir. 2011), Plaintiff William Farrell submits the instant brief in support of his request for the payment of the agreed-upon attorneys' fees and incentive award.

As will be explained more fully below, the requested amount of attorneys' fees, which are to be paid <u>on top of</u> the benefits provided to the Class, are reasonable and appropriate under both the lodestar and "percentage of the recovery" methods of determining the reasonableness of attorneys' fees. Under the lodestar method, Class Counsel's requested fee of $425,000 represents an amount that is 2.6 times its lodestar and is reasonable and appropriate under the standards of this Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002) (stating that most of the cases using the lodestar method award a multiplier of 1-4, but significantly higher amounts have been awarded.)

Using a percentage of the recovery approach, the Settlement resuscitates approximately 122,000[1] OpenTable vouchers ("Tickets") purchased by consumers that had expired, or would have expired in the near future, resulting in $3,014,000 to the Class and affording full relief.[2]

---

[1] This amount is calculated based on sales from inception through December of 2011. This time period is used throughout the brief.

[2] The Settlement also provides for extremely wide-spanning prospective relief that prohibits, *inter alia*, OpenTable from issuing Tickets that expire in time periods shorter than that required by the law. (Ex. 1, § 2.2(a)). Further, as part of the agreement between the Parties, if a restaurant does not honor a ticket, then OpenTable will issue a refund directly to the consumer. (Ex. 1, §§ 1.22 &
    (footnote continued)

Plaintiff's Motion for Award of Attorneys' Fees and        1        Case No. 11-cv-1785 SI
Expenses and Incentive Award

Even putting aside the prospective relief from the Settlement, Class Counsel's requested attorneys' fees, as a percentage of the recovery—14%—falls well below the accepted range of "20% to 30% …" and significantly under the 25% "benchmark figure." *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 270 (9th Cir.1989); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 109 F.3d 602, 606 (9th Cir. 1997).

Under both standards, the agreed-upon attorneys' fees of $425,000 are more than reasonable and Plaintiff respectfully requests that this Court grant Class Counsel the agreed upon attorneys' fees.

## II.   SUMMARY OF THE LITIGATION AND RESULTS OF THE SETTLEMENT

### A. Brief Summary of the Litigation and Settlement

Plaintiff William Farrell brought this class action in the United States District Court for the Northern District Court of California alleging that OpenTable sold gift certificates containing unlawful expiration periods. (Dkt. 1.) By way of background in 2010, OpenTable launched its Spotlight Deals program that offers consumers the opportunity to purchase vouchers, or Tickets, redeemable at restaurants throughout the country. (Dkt. 1.) Class Counsel began an extensive investigation in or around September of 2010, after receiving complaints from consumers about OpenTable's Spotlight Deals. (*See* Ex. 1 & Declaration of William C. Gray ¶ 2, attached hereto as Exhibit 4) ("Gray Decl.") As part of their examination of the received complaints, Plaintiff's counsel also shared the results of their investigation with OpenTable in or around February of 2011. The Parties exchanged their respective views and OpenTable denied that its Tickets are gift certificates subject to gift card expiration law or that it broke any laws. (Gray Decl. ¶ 3.)

On April 12, 2011, Plaintiff filed his putative class action complaint which alleged that OpenTable engaged in the sale of gift certificates containing expiration periods shorter than

---

2.2(e) & Ex. 3, § 2.)

mandated under California Civil Code Section 1749.5 ("California Gift Card Law") and the Credit Card Accountability Responsibility and Disclosure Act, PL 111-24, 123 Stat 1734 (2009) ("CARD Act") as it is incorporated into the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* (Dkt. 1.) Plaintiff further alleged violations of California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code Section 17200, and brought common law claims under breach of contract and unjust enrichment.

The filing of the complaint reopened a dialogue between the Parties. (Gray Decl. ¶ 4.) These preliminary discussions revealed that a negotiated resolution was in the best interests of the Parties. (Gray Decl. ¶ 4.) The Parties engaged in extensive negotiations and attempted to bridge the gaps between their respective positions. Ultimately, the Parties were unable to reach a comprehensive agreement on many of the essential provisions of the settlement. (Gray Decl. ¶ 4.) The Parties decided that the involvement of a neutral was their best chance at resolution. Proposed Class Counsel, along with defense counsel, engaged in a mediation on May 23, 2011, with respected neutral Barbara Reeves Neal of JAMS. (Gray Decl. ¶ 4.) The mediation between OpenTable and Plaintiff, presided over by Mediator Neal, consisted of arm's length negotiations and vigorous advocacy on behalf of each party. (Gray Decl. ¶ 4.)

The ultimate result of these negotiations was an agreement as to many of the principal terms of the Settlement, which provides immediate and complete relief to all of OpenTable's customers, as well as exceptional prospective relief. (Ex. 1.) At the end of the mediation, and with the informed consent of Plaintiff Farrell, the terms were formalized in a signed Settlement Agreement. (Ex. 1 & Gray Decl. ¶ 4.) Not until all of the relief was decided upon for the Class did the Parties engage in any discussions about attorneys' fees.[3] (Gray Decl. ¶ 5.) Even then, it was

---

[3] Class Counsel required that any negotiation over attorneys' fees begin only after all relief to the Class was firmly decided and insisted that the Settlement Agreement contain a mechanism
(footnote continued)

only after weeks of negotiations, with the extraordinary involvement of the mediator, that the Parties came to the agreed-upon fee of $425,000.[4] (Gray Decl. ¶ 5.)

### B. Results Achieved By the Settlement

This proposed Settlement results in the immediate benefit of over three million dollars ($3,000,000) to consumers that would have been otherwise unavailable to the Class. (*See* Declaration of Donald L. Frankenfeld ¶¶ 12-14, attached hereto as Exhibit 5) ("Frankenfeld Decl."). As an example, Plaintiff Farrell's Ticket, for which he paid twenty-five dollars ($25.00) for food at a restaurant specializing in Cambodian cuisine, contains an expiration date of December 1, 2011. (Dkt. 1.) The expiration period listed on the voucher is only for one (1) year, a length of time shorter than that required under California (no expirations allowed) and federal law (five years). (*See* California Gift Card Law & CARD Act.) Instead, as a result of the Settlement, all Tickets that had expired or would have expired will now be resuscitated and all Class Members can use the full value that they paid for their Tickets. (*See* Ex. 1.)

OpenTable has sold, since inception, approximately $15,079,000 worth of gross revenue in Tickets. (Frankenfeld Decl. ¶9.) Since the launch of the Spotlight Deals program in 2010, approximately 122,000 Tickets sold to consumers have expired or would have expired in the very near future. (Frankenfeld Decl. ¶ 12.) The value of these Tickets, that had expired or would have expired in the near future, now made available to OpenTable's consumers as a result of this Settlement, is approximately $3,014,000. (Frankenfeld Decl. ¶ 13.)

The Settlement also provides for extremely wide-spanning prospective relief that prohibits, *inter alia*, OpenTable from issuing vouchers that expire in time periods shorter than that required

---

for the determination fees only after the relief to the Class was negotiated. (Ex. 1, § 6 & Gray Decl. ¶ 5.)

[4] Absent agreement, Class Counsel would have been free to, and would have, requested fees in excess of the sought amount given the extraordinary result obtained for the Class.

by the law. (Ex. 1, § 2.2(a)). As a result of this Settlement, consumers will now be able use all monies that were expended on the purchase of Tickets that would have otherwise been lost. Further, the Settlement provides an explicit requirement that if a restaurant does not honor a Ticket, then OpenTable will issue a refund directly to the consumer. (Ex. 1, §§ 1.22 & 2.2(e) & Ex. 3, § 2.)

Plainly, this Agreement provides immediate and full relief to the Class. Absent this Agreement, well over a hundred thousand consumers would have lost over $3,000,000 dollars that they had expended. (Ex. 1. & Frankenfeld Decl. ¶ 14.) As a result of this Settlement, those monies are now, rightfully, available for use by the Class members who purchased Tickets. The wide-ranging prospective relief ensures that in the future no customer of OpenTable will be forced to accept a Ticket that contains an expiration date shorter than that required by law. This Settlement results in all Class Members being made completely whole, and ensures that no consumer will be unable to use the monies they expended on OpenTable's products.

### III. THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES BECAUSE THEY ARE REASONABLE

#### A. Class Counsel's Attorneys' Fees Analyzed by the Lodestar Method

Contingent on Court approval, OpenTable has agreed to pay attorneys' fees and the reimbursement of expenses in the amount of $425,000. This amount is reasonable when compared against the fully documented lodestar calculation. The lodestar calculation provides a figure that ensures the prevailing party is compensated for the number of hours reasonably expended on litigation. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir.2003)); *see In re Bluetooth*, 654 F.3d at 941 (stating that an award of attorneys' fees is appropriate in the class action context to reward counsel who take on socially beneficial litigation.) This figure can be adjusted up or down to make certain attorneys' fees are fair and reasonable in cases, such as here, where a settlement provides a

mixture of monetary and non-monetary components of class relief. *In re Bluetooth*, 654 F.3d at 943 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998)).

In this Circuit, an enhancement to the base lodestar calculation is made by analyzing the factors laid out in *Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67 (9th Cir. 1975). Lodestar fee enhancement accounts for the possibility that the attorney will not receive payment if the suit does not succeed. *Vizcaino*, 290 F.3d at 1051. The majority of class action fee awards using lodestar apply a multiplier of 1 to 4, but considerably higher amounts have been awarded. *Id.* at 1051 n. 6.5. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d Ed. 1992) (recognizing that multipliers of one to four are frequently awarded.)

Here, the unadjusted lodestar reasonably supports the agreed-upon fee of $425,000. As supported by the attached declaration, Class Counsel have calculated a lodestar figure of $162,325.06. (*See* Gray Decl. ¶ 9.) The following chart breaks down the lodestar figure into hours and hourly rate by each attorney and expenses:

| Attorney (position) | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|
| Jay Edelson (Managing Partner) | 59 | $600 | $35,400 |
| William C. Gray (Group Chair) | 209.6 | $395 | $82,792 |
| Collin Bond (former associate) | 31 | $325 | $10,075 |
| Ari Scharg (associate) | 16.60 | $345 | $5,727 |
| Law Clerks | 99.7 | $210 | $20,937 |
| **Attorney Time Total** | **415.9** | | **$154,931** |
| **Expenses** | | | **$7,394.06** |
| **Total** | | | **$162,325.06** |

(Gray Decl. ¶ 9.) The attorneys performing work on this litigation are billed at rates that correlate to their respective experience, that are reasonable in the California and Chicago legal markets, and which have been approved by state and federal courts in similar settlements. (Gray Decl. ¶ 9.)

Further, the hours submitted were reviewed, and any unnecessary hours have been adjusted. (Gray Decl. ¶ 8.) As documented above, Class Counsel have expended in excess of $7,394 in reimbursable expenses, such as filing fees, appearance fees, mediation fees, travel, copying, and case administration. (Gray Decl. ¶ 11.)

Lodestar fee enhancement accounts for the possibility that the attorney will not receive payment if the suit does not succeed. *Vizcaino*, 290 F.3d at 1051. Here, the agreed-upon fees of $425,000 represent an amount that is 2.6 times the lodestar of $162,325.06.[5] (*See* Gray Decl. ¶¶ 8-10.) The agreed-upon fees are a reasonable multiplier of the total base lodestar, falls well within the normal range of 1-4, and is reasonable when considered by the *Kerr* Factors.[6]

**B. The Reasonableness of Class Counsel's Lodestar Enhancement is Supported by the *Kerr* Factors**

Consideration of the factors set forth in *Kerr* support the reasonableness of the requested attorneys' fees. Courts in this Circuit look to the *Kerr* factors to ensure that lodestar figures reasonably scale to the results achieved. *In re Bluetooth*, 654 F.3d at 942 n. 7. Although the Court need not apply all *Kerr* factors to determine a reasonable multiple of the lodestar value, the relief obtained by the Class is the "foremost" consideration. *Id.* at 942. Below, the most relevant factors are discussed.[7]

---

[5] Class Counsel anticipate at least an additional $25,000 in time and expenses to be incurred through final approval of the settlement and the expiration of the claims deadline, which is <u>not</u> included in the base lodestar.

[6] *See also, Craft v. County of San Bernardino*, No. EDCV05-00359 SGL, 2008 WL 916965 (C.D. Cal. Apr 01, 2008) (approving a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher"); *In re Trilogy Sec. Litig.*, C-84-20617(A) (N.D. Cal. 1986) (cited in 3 Newberg & Conte, Newberg on Class Actions, § 1403, at 14-5 n.20) (multiplier of 4.37); and *Keith v. Volpe*, 86 F.R.D. 565, 575-77 (C.D. Cal.1980) (awarding multiplier of 3.5).

[7] The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time
(footnote continued)

### 1. *The Results Obtained Were Exceptional and the Time and Labor Required Were Necessary to Achieve that Result.*

The foremost consideration in determining the reasonableness of attorneys' fees is the "benefit obtained for the class." *Id.* As discussed above, Class Counsel was able to secure an exceptional result for the Class, obtaining full relief for all of OpenTable's customers. The full relief encompasses $3,014,000 worth of monies made immediately available to the Class that otherwise were lost, and restores the value to approximately 122,000 Tickets to OpenTable's customers. (Frankenfeld Decl. ¶¶ 10-14.) Further, future customers of OpenTable who purchase a SpotLight deal will be given Tickets that do not expire in violation of the law. (Ex. 1, §2.2(a).) The relief sought and obtained by Class Counsel makes each customer completely whole and supports the reasonableness of the agreed-upon fees.

Class Counsel's total lodestar is $162,325.06 and represents the total work Class Counsel has undertaken since becoming aware of the issue at hand, and ultimately, achieving this result for the Class. (Gray Decl. ¶ 8.) Class Counsel has reasonably spent over one year researching, filing, litigating, negotiating, and ultimately settling this matter to obtain such strong relief for the Class. (Gray Decl. ¶ 2.) Indeed, over 415.9 hours were expended by Class Counsel as representatives for the class. (Gray Decl. ¶ 8.) Necessarily, the time spent prosecuting this case precluded other employment by Class Counsel. (Gray Decl. ¶ 10.) Class Counsel has expended a significant, but appropriate, amount of time laboring for Plaintiff and the Class by engaging in numerous mediation and negotiation sessions. (Gray Decl. ¶ 4.) This culminated into a carefully crafted

---

limitations imposed by the case; (8) the amount in question and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 69-70. Many of these factors are addressed throughout this brief and "[t]he Court need not discuss specifically each factor so long as the record shows that the court considered the factors called in to question by the case at hand. *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983).

settlement agreement that provides over $3,000,000 and strong prospective relief to the Class. (Gray Decl. ¶ 7 & Frankenfeld Decl. ¶ 13.) Accordingly, the exceptional result obtained for the Class supports the reasonableness of the agreed-upon fee.

### 2. *The Case Involved Novel Issues of Law and Presented Untested Legal Questions.*

The novelty of issues of law presented by a case is a factor considered in the approval of attorneys' fees. The "Daily Deal" sales phenomenon has changed the way people purchase goods and services. In this case, Class Counsel had to quickly and effectively study the new and emerging "Daily Deal" marketplace, particularly as it related to OpenTable's new products. (Gray. Decl. ¶ 2.) Class Counsel built an in-depth knowledge of the "Daily Deal" industry including how the Tickets are marketed, who buys them, the relationship between sellers and consumers, and the fledgling industry's efforts to rely upon expired gift certificates for profit. (Gray Decl. ¶ 2.) While Class Counsel has experience litigating in this industry, this was the first, and only, case of its kind settled in this jurisdiction. (Gray Decl. ¶ 6.) Legally, the litigation involved novel questions concerning the application of statutory gift card claims to the emerging "Daily Deals" market. (Gray Decl. ¶ 2.)

Further, the risk that continued litigation would provide marginal or negative benefit to the Class was a significant factor, particularly since full relief was achieved for the Class. *In re OmniVision Techs., Inc.*, 559 F. Supp 2d 1036, 1046-47 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1051) (stating that the risk of plaintiffs not recovering at all should a case be further litigated is a significant factor in the award of fees). Class Counsel agreed to commence this action knowing that the case involved novel issues of law for which there had not been any concrete rulings, and despite such risk, achieved an exceptional outcome, resulting in full relief to the Class. (Gray Decl. ¶¶ 4, 12.) The Plaintiff's claims were largely untested, the amount in controversy and size of the Settlement Class were substantial, and a skillful firm was appointed to represent Defendant. (Gray Decl. ¶¶ 3-10.) The risk that the Settlement Class may have recovered less than the result obtained had the litigation continued was substantial, if not certain, given that

each consumer is made completely whole by the Settlement. These factors fully support the reasonableness of the agreed-upon fee.

### 3. *Class Counsel Skillfully Prosecuted the Action.*

Class Counsel has engaged in numerous class action suits with similar size and scope. (Gray Decl. ¶ 9.) While any litigation can be difficult and require skill, class action cases are unique in the degree of specialization required. Certainly, the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, 08-01520 SC, 2009 WL 248367 *1 (N.D. Cal. 2009) (quoting *Edmonds v. United States*, 658 F.Supp 1126, 1137 (D.S.C. 1987)). Here, Class Counsel have a proven track record of effectively and successfully prosecuting complex national class action cases. (*See* A Firm Resume of Edelson McGuire, LLC, attached hereto as Exhibit 6.) From the outset, Class Counsel approached this case by intensely researching the "Daily Deal" industry and market, working with the Class Representative, devising a litigation strategy, reviewing a myriad of financial documents, engaging in meaningful mediation, and negotiating a strong settlement agreement that provides complete and full relief to each and every class member. (Gray Decl. ¶¶ 2, 12.)

Additionally, the skill and quality of opposing counsel is relevant in evaluating the Class relief obtained by Class Counsel. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Class Counsel faced formidable and seasoned defense counsel throughout this litigation in an area of the law that was untested. Each detail of the Settlement was vigorously negotiated. (Gray Decl. ¶¶ 3-4.) Most importantly, despite experienced defense counsel, Class Counsel skillfully prosecuted this action resulting in complete relief to each class member. Accordingly, the agreed upon fee is supported by this factor.

### 4. *The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel Supports the Reasonableness of the Agreed-upon Fee.*

The nature of the fee structure supports the reasonableness of the agreed-upon fee. A contingent-fee basis allows for plaintiffs who could otherwise not afford competent attorneys to receive adequate representation. *Knight*, 2009 WL 248367 *1 (citing *In re Washington Pub.*

*Power Supply System Securities Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050)). The risks in bringing this case were substantial. Gift card expiration laws, as they apply to the emerging deal of the day industry is almost entirely unresolved, and no one could undertake such litigation with an expected result. The risk that Class Counsel would not receive any compensation justifies a larger fee than if Class Counsel was billing by the hour. *Id.* Class Counsel has committed and worked 415.9 hours towards the successful prosecution of this case. (Gray Decl. ¶ 8.) Yet, thus far, Class Counsel has not received any compensation for that time. (Gray Decl. ¶ 10.) Further, the 415.9 hours spent on this case represents the time that could have been spent on other cases. (Gray Decl. ¶¶ 9-10.) Due to the inherent risk absorbed by Class Counsel in litigating this matter to the benefit of the Class, the agreed-upon fee is reasonable.

### C. The Agreed-Upon Fee Is Reasonable When Cross-Checked Against The Percentage of the Overall Class Relief

The requested attorneys' fees when measured as a proportion of the relief obtained for the Class—14% of the $3,014,000—is well below the benchmark of 25% regularly used by courts in the 9th Circuit.[8] Even though the lodestar method may be the "perfectly appropriate method of fee calculation," courts are encouraged to guard against an unreasonable result by cross-checking their calculations against a second method. *See Vizcaino,* 290 F.3d at 1050–51; *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 820 (3d Cir. 1995). Although, the form of relief here is not a true common fund, and the fees do not diminish the relief provided to the Class, the reasonableness of an award should nonetheless be cross-checked with other methods, such as the requested fees percentage of the overall class relief. *In re Bluetooth*, 654 F.3d at 942; *see also Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1328 &

---

[8] This does not take into account any of the significant value of the prospective relief achieved as a result of this Settlement.

n. 20 (9th Cir.1999) (discussing how a cross-check examining attorneys' fees relative to the benefits achieved for the class, whether borne out of a common fund or otherwise, is appropriate.)

In examining the reasonableness of fees as measured against the relief provided to the class, courts have established a "benchmark" award of 25%, with the average being 20-30%. *In re OmniVision Tech., Inc.*, 559 F. Supp 2d at 1047. Simply, if the cross-check approaches the benchmark award, it confirms that the lodestar is reasonable. Here, the agreed-upon attorneys' fee amount is approximately 14% of the value of the settlement, far below the established benchmark, and is therefore reasonable. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d at 271 (stating that the object in examining the percentage of the recovery method is to "reasonably compensate counsel for their efforts …")

The cross-check confirms that the sought award is reasonable and ensures a reasonable proportion "between the fee award and the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 945. Also, the requested fees are also to be paid on top of and apart from the benefits achieved for the Class. (*See* Ex. 1.) Even still, the award represents only 14% of the relief granted to the Class and adequately compensates counsel for the number of hours devoted to this case. Gray Decl. ¶ 12.) As such, the requested attorneys' fees are clearly reasonable when cross-checked against the percentage of the recovery method. *See In re OmniVision*, 559, F. Supp. 2d. at 1047 (stating that awards in this Circuit "range around 30%"); *see also In re Activison Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (finding that "in most common fund cases[] the award exceeds the benchmark.")

The agreed-upon attorneys' fees are reasonable when checked against methods utilized by the Ninth Circuit. The requested attorneys' fees are supported by the lodestar method of review that produces a prevailing hourly rate for Class Counsel and are acceptable under the standards articulated by this Circuit. The agreed-upon fees are supported by the *Kerr* factors, including the extraordinary full relief obtained for the Class, the novelty of the case, and the quality of prosecution. Further, the appropriateness of the award is conclusively confirmed when cross-checked as a percentage of the benefit to the Class, as the attorneys' fees represent only a small

percentage (14%), far below the 25% benchmark. Therefore, the agreed-upon attorneys' fees are reasonable and this Court should grant approval.

## IV. THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD

Plaintiff requests that the Court approve the incentive award for Class Representative William Farrell in the amount of $1,600, as agreed by the Parties. (Ex. 1, § 6.3 & Gray Decl. ¶ 12.) "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive awards." *Knight*, 2009 WL 248367, at *7 (quoting *Staton*, 327 F.3d at 977). The Court has discretion to approve any incentive award and should consider relevant factors, including: "[(1)] the actions the plaintiff has taken to protect the interests of the class, [(2)] the degree to which the class has benefitted from those actions, [and (3)] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. The amount of work Mr. Farrell has expended on behalf of the Class is reflected in the reasonable incentive award.

Mr. Farrell acted in the best interest of the Class throughout the litigation. (*See* Declaration of William Farrell ¶¶ 8-10, attached hereto as Exhibit 7.) ("Farrell Decl.") Further, Mr. Farrell communicated at length with Class Counsel regarding the factual development of the case, the "Daily Deals" industry, the process by which consumers purchase OpenTable Tickets, and his personal experience with a Ticket containing an expiration date. (Farrell Decl. ¶¶ 4-8.) Mr. Farrell reviewed many documents filed and exchanged by the Parties, including the complaint, settlement agreement, and other documents, and likewise was consulted on the accuracy of the statements made in these documents and the veracity of the claims. (Farrell Decl. ¶ 4.) During the pendency of this Action, Mr. Farrell took time out of his personal and professional life, committing all necessary efforts to assist in the preparation, litigation, and settlement of this case on behalf of himself and a putative class of consumers. (Farrell Decl. ¶ 5.) Accordingly, Plaintiff requests that the Court approve the agreed-upon incentive award of $1,600.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court award Plaintiff the

reasonable, agreed upon attorneys' fees and incentive award.


Dated: November 28, 2011                Respectfully Submitted,


                                        WILLIAM FARRELL, individually and on
                                        behalf of a class of similarly situated individuals,


                                         /s/ William C. Gray


                                        One of Plaintiff's Attorneys


SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

William C. Gray (*Pro Hac Vice*)
wgray@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on November 28, 2011, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: November 28, 2011                    EDELSON MCGUIRE, LLC

                                By:   /s/ William C. Gray
                                      William C. Gray