1

SEAN REIS (SBN 184004)
sreis@edelson.com

2

EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300

3

Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124

4

Facsimile: (949) 459-2123

5

JAY EDELSON (Pro Hac Vice)
jedelson@edelson.com

6

WILLIAM GRAY (Pro Hac Vice)

7

wgray@edelson.com
EDELSON MCGUIRE, LLC

8

350 North LaSalle, Suite 1300
Chicago, IL 60654

9

Telephone: (312) 589-6370

10

Facsimile: (312) 589-6378
ATTORNEYS FOR PLAINTIFF

11

12

13

# UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

### OAKLAND DIVISION

16

17

WILLIAM FARRELL, individually and on
behalf of all others similarly situated,

18

   Plaintiff,

19

   v.

20

21

OPENTABLE, INC., a Delaware corporation,
d/b/a OpenTable.com,

22

   Defendant.

23

24

25

26

27

28

) No. CV 11-1785 SI
)
)
) **PLAINTIFF'S NOTICE OF MOTION**
) **AND MOTION FOR FINAL APPROVAL**
) **OF CLASS SETTLEMENT AND CLASS**
) **CERTIFICATION**
)
) Location: Courtroom 10, 19th Floor
) 450 Golden Gate Avenue
) San Francisco, CA 94102
) Date: January 20, 2012
) Time: 9:00 am
)
) Honorable Susan Illston

1

**NOTICE OF MOTION**

2      NOTICE IS HEREBY GIVEN that the Plaintiff will move the Court, pursuant to Federal

3   Rule of Civil Procedure 23(e) to grant final approval of the settlement in this class action on

4   January 20, 2012 at 9:00 A.M., or at such other time as may be set by the Court, at 450 Golden

5   Gate Avenue, San Francisco, CA 94102, Courtroom 10, Nineteenth Floor, before the Honorable

6   Susan Illston.

7      Plaintiff seeks final approval of this class action settlement as fair, reasonable, and

8   adequate and the final approval of class certification. The Motion is based on this Notice of

9   Motion, the authorities cited in the attached brief in support, oral argument of counsel, and any

10  other matter that may be submitted at the hearing.

11  Dated: December 16, 2011                    Respectfully Submitted,

12

13                                             WILLIAM FARRELL, individually and on
                                               behalf of a class of similarly situated individuals,

14

15

16                                              /s/ William C. Gray

17

18                                             JAY EDELSON (*Pro Hac Vice*)
                                               jedelson@edelson.com
19                                             WILLIAM GRAY (*Pro Hac Vice*)
                                               wgray@edelson.com
20                                             EDELSON MCGUIRE, LLC
                                               350 North LaSalle, Suite 1300
21                                             Chicago, IL 60654
                                               Telephone: (312) 589-6370
22                                             Facsimile: (312) 589-6378
                                               ATTORNEYS FOR PLAINTIFF
23

24

25

26

27

28

1

**Table of Contents**

2   I.   INTRODUCTION ..................................................................................................1

3   II.   KEY TERMS OF THE SETTLEMENT AGREEMENT ....................................2

4   III.   THE NOTICE DIRECTED TO THE CLASS COMPORTS WITH DUE PROCESS
5        AND RULE 23 ......................................................................................................4

6   IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL..................................5

7       A.   The Absence of Collusion Supports Settlement ........................................6

8       B.   The Strength of Plaintiff's Case. ................................................................9

9       C.   The Risk of Continued Litigation. ............................................................10

10      D.   The Relief Obtained in the Settlement Agreement Is Substantial .................11

11      E.   The Extent of Discovery Completed and the Stage of the Litigation ...........12

12      F.   The Experience and Opinion of Counsel...................................................13

13      G.   The Presence of a Governmental Participant............................................14

14      H.   The Reaction of Class Members................................................................14

15  V.   CONCLUSION ...................................................................................................16

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# <u>Table of Authorities</u>

3
4

**UNITED STATES SUPREME COURT CASES**

5

*Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983) .................................................................. 5

6

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................ 4

7

*Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414 (1968) ...................... 9

8
9

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

10

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................ 4, 5, 15

11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......................................... 5

12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) ........................................ 5, 6

13

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); ............... passim

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)) .................................... 10, 12

14

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................. 13

15

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir.2004) .............................................. 9

16

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................ 6

17

*Rodriguez v. W. Publg. Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................... 10, 11, 13

18

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .................................................................... 4

19
20

**UNITED STATES DISTRICT COURT**

21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ................................................ 13

22

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir. 1981) ........................ 6

23

*Garner v. State Farm Mut. Auto. Ins. Co.*, CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. 2010) .......... 7, 10, 14

24

*In re HP Laser Printer Litig.*, No. SACV 07-0667 AG RNBX, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ............ 7

25

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................... 10, 11, 12, 13

26

*Kent v. Hewlett-Packard Co.*, 5:09-CV-05341-JF HRL, 2011 WL 4403717 (N.D. Cal. 2011) ............................ 14, 15

27

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................................ 12

28

1

**STATE COURT CASES**

2

*Scott v. Blockbuster, Inc.*, D 162-535, 2001 WL 1763966 (Tex. Dist. 2001)..................................................................... 16

3

4

**STATUTES AND FEDERAL RULES**

5

15 U.S.C. § 1693 ........................................................................................................................................................... 11

6

28 U.S.C. § 1715 ............................................................................................................................................................. 5

7

Credit Card Accountability Responsibility and Disclosure Act, PL 111-24, 123 Stat 1734 (2009) ............................ 11

8

Fed. R. Civ. P. 23(c)(2)(B)............................................................................................................................................. 4

9

Fed. R. Civ. P. 23(e)..................................................................................................................................................... 4, 5

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

On September 27, 2011, the Court entered its Order Granting Preliminary Approval Of Class Action Settlement And Class Certification (the "Preliminary Approval Order"), directing the parties to implement the notice plan giving an opportunity for class members to opt out of the settlement or object to any of its terms (including attorneys' fees and expenses or incentive award to the representative plaintiffs) and set a date for the final approval hearing. (Dkt. 29.) As called for in the notice plan approved by the Court, direct notice to each class member ascertainable through substantial effort was provided via e-mail, the same method by which OpenTable normally communicates with its customers, and was supported with Internet publication by a dedicated settlement website. CAFA notice was also provided to the required governmental agencies. Class members have responded extremely favorably to the settlement. The deadline for the submission of exclusions and objections has now passed and given the strength of the settlement—providing full relief to the Class worth over $3,000,000 — it is not surprising that there have been only three documents styled as objections submitted concerning any aspect of the settlement and only thirteen opt-outs from the direct notice sent to nearly 200,000 unique e-mail addresses.

The complexity and novelty of Plaintiff's claims, the vigorous defense promised by OpenTable, the arms-length negotiations and the resultant Settlement providing complete relief to the Class, all support that the Court should find the results achieved in the litigation[1], are more

_____

[1]   Detailed descriptions of this litigation, which for efficiency will not be repeated here, have been summarized in the Settlement Agreement, Plaintiff's Motion for Preliminary Approval, and (footnote continued)

than "fair, reasonable, and adequate" and that the Settlement fully warrants final approval. Accordingly, Plaintiff William Farrell now moves the Court to grant final approval of the proposed settlement (the "Settlement") with Defendant OpenTable, Inc. ("OpenTable") (Dkt. 29.)

## II.   KEY TERMS OF THE SETTLEMENT AGREEMENT

As the Court knows from the preliminary approval process, this litigation has brought about several salutary results. The key terms of the Settlement follow:

**A.     Class definition:** The Court, in its September 27, 2011 Preliminary Approval Order (Dkt. 29), certified a settlement class consisting of:

> All Persons residing in the United States of America who purchased a Spotlight Deal or otherwise received an OpenTable Ticket for a Spotlight Deal prior to the date of this Order.

**B.     Monetary relief:** The Settlement results in the creation of the immediate benefit of over three million dollars ($3,000,000) to consumers that would have been otherwise unavailable to the Class. It is, to the best of our knowledge, the largest and only class-wide settlement of its kind. OpenTable has sold, since inception, approximately $15,079,000 worth of gross revenue in vouchers or as it terms them, "Tickets." (Dkt. 30-16, ¶9.) Since the opening of the Spotlight Deals program in 2010 through December of 2011, approximately 122,000 Tickets sold to consumers have expired or would have expired in the very near future. (Dkt. 30-16, ¶ 12.) The value of these Tickets now made available to OpenTable's consumers, as a result of this Settlement, is approximately $3,014,000. (Dkt. 30-16, ¶ 13.)

**C.     Prospective relief:** The Settlement also provides for extremely wide-spanning

---

Plaintiff's Motion for Award of Attorneys' Fees and Expenses and Incentive Award. (Dkts. 26, 30.)

prospective relief that ensures that the complained-of conduct will never occur again. The Settlement prohibits, *inter alia*, OpenTable from issuing Tickets that expire in time periods shorter than that required by the law governing gift certificates. (Dkt. 26-1, § 2.2(a)). Plainly, no consumer will be ever be issued a Ticket by OpenTable that resembles the objectionable Ticket in this matter. Further, consumers are given an absolute guarantee that they will be able to use the funds they have expended in accordance with the law, regardless of the behavior of OpenTable's restaurant partners. The Settlement provides an explicit requirement that if a restaurant does not honor a Ticket, then OpenTable will issue a refund directly to the consumer. (Dkt. 26-1, §§ 1.22 & 2.2(e)).

**D.     Payment of Notice and Administrative Expenses**: OpenTable is obligated to pay, separate and apart from any relief given to the Class, the full cost of sending the settlement class notice directly to class members, for the creation of the Internet publication, web hosting, and all costs relating to the administration of this Settlement. (Dkt. 26-1, § 3.5).

**E.     Compensation for Class Representative:** In addition to any benefit under the Settlement, and in recognition of his efforts on behalf of the Class, subject to the approval of the Court, OpenTable has agreed to pay the Class representative an incentive award for appropriate compensation for his time and effort serving as the Class representative in this litigation in the amount of $1,600.

**F.     Payment of Attorneys' Fees and Expenses:** Subject to the approval of the Court, OpenTable has agreed to pay Class Counsel $425,000 in attorneys' fees and the reimbursement of costs on top of the benefits provided to the Class. Class Counsel has agreed not to make a request that exceeds this amount and OpenTable has agreed that they will not oppose Class Counsel's request for such an award. (*See* Dkt. 26-1, § 6 & Dkt. 30 for full discussion of attorneys' fees.)

**G.     Release of Claims**

Should the Court award final approval to the Settlement, Class members who have not timely and validly requested exclusion from the settlement class will release and forever discharge OpenTable and its partner restaurants from any and all claims, where known or unknown, that

were alleged were or could have been alleged by Plaintiff regarding the expiration dates included on OpenTable's Spotlight Deals and/or Tickets. (*See* Dkt. 27-1, § 1.23 for full Release language.)

## III.   THE NOTICE DIRECTED TO THE CLASS COMPORTS WITH DUE PROCESS AND RULE 23

The Court-approved notice plan was executed to the standards of Due Process and Rule 23. In a class action case, notice must be provided to the class before final approval by a court. Fed. R. Civ. P. 23(e)(1). The class must receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, "best practicable" does not mean "actual notice." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice to the class must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

Notice of a class action settlement must be properly disseminated to the class, its content must also "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard." *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004). Under Rule 23(c)(2)(B), the notice directed to the class must clearly state: (a) the nature of the action; (b) the definition of the class certified; (c) the class claims, issues, or defenses; (d) that a class member may enter an appearance through an attorney if they desire; (e) that the court will exclude any member of the class upon request; (f) the method and time to request exclusion; and (g) that the judgment will be binding on class members. Fed. R. Civ. P. 23(c)(2)(B). These requirements have been strictly adhered to in this case.

In its September 27, 2011 Order Granting Preliminary Approval of Class Settlement and Class Certification, the Court approved the form and methods of notice set forth in the Settlement Agreement, stating that the notice plan was "reasonably calculated to adequately apprise class members of (i) the pending lawsuit, (ii) the proposed settlement, and (iii) their rights, including the right to either participate in the settlement, exclude themselves from the settlement, or object to

the settlement." (Dkt. 29, ¶3.) Since the Preliminary Approval Order, those directives have been fully implemented, ensuring that virtually all Class members received notice of the Settlement. (*See* Declaration of Jennifer M. Keough, hereto attached as Exhibit 1) ("Keough Decl.") Pursuant to the direct notice requirement of the Settlement Agreement, almost 200,000 e-mails were sent to the e-mail addresses of class members, informing them of the Settlement. (Keough Decl. ¶ 4.) Consequently, every provision of the Settlement was available to each Class member. (Keough Decl. ¶¶ 2-4.)

Defendant also created a website, www.farrellsettlement.com, which provides a link to view the Settlement Agreement, contains answers to frequently asked questions, and serves as long-form notice of the Settlement. (Keough Decl. ¶ 3.) Further, OpenTable fulfilled its obligation under CAFA by providing notice of the Settlement to the required government agencies. 28 U.S.C. § 1715; (Keough Decl. ¶ 5.) Accordingly, notice to the Settlement Class complied with the Preliminary Approval Order, Rule 23, and Due Process, plainly satisfying the standard of the "best practicable" notice under the circumstances.

## IV.   The Settlement Warrants Final Approval

The law favors the compromise and settlement of class action suits. *See, e.g., Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Federal Rule of Civil Procedure 23(e), "the decision to approve or reject a settlement is committed to the sound discretion of the trial Judge … " *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988); *accord In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see* Fed. R. Civ. P. 23(e). In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

adequate to all concerned." *Hanlon*, 150 F.3d. at 1027 (internal citation omitted). All of the

relevant factors support final of approval of the Settlement here.

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

preferred means of dispute resolution," but the court has discretion in its assessment of the fairness

of a settlement, and generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity,
> and likely duration of further litigation; (3) the risk of maintaining class
> action status throughout the trial; (4) the amount offered in settlement; (5)
> the extent of discovery completed and the stage of the proceedings; (6) the
> experience and views of counsel; (7) the presence of a governmental
> participant; and (8) the reaction of the class members of the proposed
> settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Additionally, recent

decisional authority from this Circuit instructs that courts are to carefully scrutinize cases that are

settled without adversarial certification for possible collusion. *In re Bluetooth*, 654 F.3d at 946-47

(discussing "warning signs" that warrant heightened scrutiny, including disproportionate

distributions, "clear sailing" fee arrangements, and reversion of unawarded fees back to the

defendant). The Court is entitled to exercise its "sound discretion" when deciding whether to grant

final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661

F.2d 939 (9th Cir. 1981).

In the instant case, each of the above-listed factors militates in favor of approving the

Settlement.

**A. The Absence of Collusion Supports Settlement**

When a settlement features disproportionate distributions, a clear-sailing provision, and a

reversion of unawarded attorneys' fees, "the Court must 'examine the negotiation process with

even greater scrutiny than is ordinarily demanded.'" *In re HP Laser Printer Litig.*, No. SACV 07-0667 AG RNBX, 2011 WL 3861703, at *4 (C.D. Cal. Aug. 31, 2011) (quoting *In re Bluetooth*, 654 F.3d at 947). Though the first of these three conjunctive warning signs is not present, the Court should also consider the absence of collusion as a factor in favor of approval of this Settlement. *Garner v. State Farm Mut. Auto. Ins. Co.*, CV 08 1365 CW EMC, 2010 WL 1687832, *13 (N.D. Cal. 2010).

At the onset, the presence of a neutral mediator is a "factor weighing in favor of a finding of non-collusiveness," though "not on its own dispositive." *In re Bluetooth* 654 F.3d at 948. The respected neutral Barbara Reeves Neal of JAMS, with experience in hundreds of mediations, presided over the mediation and ensured that the settlement process was "conducted at arms-length." (Barbara Reeves Neal Declaration ¶¶ 6, 11, hereto attached as Exhibit 2) ("Reeves Neal Decl.") The mediator noted that "while professionally conducted, it was quite adversarial at many times…" (Reeves Neal Decl. ¶ 11.) The mediator attests that the "negotiations were hard fought and intense" and that the parties behaved ethically. (Reeves Neal Decl. ¶¶ 10-13.) Importantly, the mediator confirmed that the parties did not negotiate the issue of attorneys' fees until *after* all relief to the class was agreed upon, and even then, the issue of attorneys' fees was "hotly contested." (Reeves Neal Decl. ¶12.) The mediator even stated that "there is no doubt that the amount of attorneys' fee and incentive payments were negotiated only after the principle terms of the class settlement had been agreed to and settlement papers memorializing those terms were decided upon." (Reeves Neal Decl. ¶12.)

The terms of the Settlement Agreement itself are powerful indicia of the non-collusiveness of this Settlement. The Agreement was signed *before* the Parties had negotiated attorneys' fees and provides a mechanism for the determination of fees only *after* the Agreement was executed. (William C. Gray Declaration ¶ 8, hereto attached as Exhibit 3) ("Gray Decl.") The Agreement provides a multiple page methodology by which after the execution of the Agreement completely establishing the relief to the Class, the Parties were only then to negotiate the issue of attorneys' fees in good faith, and if necessary, participate in another mediation with Ms. Reeves Neal. (Dkt.

1  26-1, § 6.) It also provided that if negotiation through mediation failed (as it almost did), a further

2  path of resolution through arbitration or the court. (Dkt. 26-1, § 6.; Gray Decl. ¶ 9) The fact that

3  the Agreement was signed before fees were negotiated, coupled with the rigorously adhered

4  procedures in the Agreement, demonstrates that there was clearly no collusion by the parties.

5          Importantly, the Settlement does not provide for disproportionate distributions to Class

6  Counsel relative to those received by the Class. *In re Bluetooth*, 654 F.3d at 947. As discussed

7  more fully in Plaintiff's previous filing (Dkt. 35), the Settlement results in the "immediate benefit

8  of over three million dollars ($3,000,000) to consumers," while Class Counsel has requested

9  reimbursement for attorneys' fees and reimbursement in the amount of $425,000. *See* (Dkt 35-1, ¶

10 13) ("the total value of previously expired vouchers now resuscitated for OpenTable's customers

11 is $3,014,000.")  Unlike the fees at issue in *In re Bluetooth*—that represented *83.2%* of the total

12 value of the settlement—the agreed-upon fees here are only 14% of the total amount of the

13 Settlement, without factoring any inclusion of the value of the prospective relief. 654 F.3d at 945;

14 Dkt. 35. Taking into account the Defendant's "overall willingness to pay," as this Court must, it is

15 apparent that the vast benefit obtained from the Settlement, is, as it should, apportioned to the

16 Class.[2]

17         Finally, the Settlement's provisions that OpenTable would not object up to, and that

18 Plaintiff's would not seek more than, the negotiated attorneys' fees is proper. A "clear sailing

19 provision [is] not prohibited" and merely "reveals the defendant's willingness to pay" for the total

23   [2]   As fully discussed in Plaintiff's Motion for Award of Fees and Expenses, the requested attorneys' fees are reasonable under this Circuit's standards, by either the lodestar or percentage of the recovery method for examining fees. (Dkt. 35.) As stated therein, the requested attorneys' fees represent a multiplier of only 2.6, and 14% of the recovery obtained. (Dkt. 35.) It should also be noted that the effective multiplier for this case is now lower than 2.6 given the hours expended by Class Counsel since the submission of Plaintiff's Motion for Award of Fees and Expenses.

sum of a settlement agreement.[3] *In re Bluetooth* 654 F.3d at 949. Though any unawarded fees would revert to the Defendant, this is not unreasonable given that the Class's *full* relief is unaffected. The complained-of conduct in the Complaint, the impermissibly short expiration of Tickets or the issuance of Tickets with objectionable periods of expiry, is completely remedied by the Settlement. Plainly, the Class is made entirely whole. This is not a case where reversionary funds go to the "putative wrongdoer[]," instead of helping to satiate the harms suffered by the class. *See In re Bluetooth*, 654 F.3d at 947 (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir.2004)). Instead, upon approval of the Settlement, the Class is made completely whole in the exact and complete amount that each Class Member paid for their Ticket. The agreed-upon fees reflect only the upward bound of OpenTable's maximum willingness to pay and any reversion of these allocated sums, given that the Class's relief is completely unaffected, is definitively reasonable. Accordingly, the "non-collusive [nature of this] settlement, conducted at arm's length through intense, lengthy mediation, …" fully supports approval. (Reeves Neal Decl. ¶ 9.)

**B. The Strength of Plaintiff's Case**

"Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation." *Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968). The analysis of Plaintiff's probability of success on the merits, however, is not rigid or beholden to any particular formula

---

[3]   Further, this is not a clear sailing provision as existed in *In re Bluetooth*. The provision in *In re Bluetooth*, provided that defendants agreed not to object to an award of attorneys' fees "up to eight times the monetary *cy pres* relief afforded the class." 654 F.3d at 947. Instead in the instant matter, Class Counsel also compromised by agreeing to limit its request to the sought amount. Absent this Agreement, Class Counsel would have been free to, and would have, argued for a higher amount. The Agreement does not allow for the "red carpet treatment" that the *In re Bluetooth* court found potentially problematic. *Id*. (internal citation omitted.)

and "the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, *9 (citing *Rodriguez v. W. Publg. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

While Class Counsel are confident in the strength of Plaintiff's claims, they are also cognizant of the legal uncertainty in this litigation without the instant Settlement Agreement. (Gray Decl. ¶ 4.) Here, Defendant has continuously denied any wrongdoing and promises a vigorous defense of the action in the absence of this Settlement Agreement. (Gray Decl. ¶ 5.) Though Plaintiff believes that he and other Class members were clearly harmed, the main issue of applying gift certificate statues to the emerging "Daily Deal" industry is not settled law. (Gray Decl. ¶ 5.) While the Parties exchanged their respective views of the instant action, the guidance of respected neutral of Barbara Reeves Neal of JAMS was necessary to allow the formation of the basis for eventual settlement. (Gray Decl. ¶ 6.) Furthermore, this case settled before a decision on certification. Given the inherent risk in any class certification motion, the unsettled nature of the issues remaining in this case, and the promised vigorous defense by OpenTable, the strength of Plaintiff's case could not justify rejection of this Settlement, providing complete relief to the Class. This factor (strength of plaintiff's case) favors approval of the Settlement.

## C. The Risk of Continued Litigation

The next "fairness" factor the Court may consider is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). In the absence of settlement, it is almost certain that the expense, duration, and complexity of the protracted litigation would result in less than the full relief that this Settlement provides. This factor strongly favors the approval of a settlement where, as here, significant procedural hurdles remain, including dispositive motions, ongoing and laborious discovery, and potentially trial. *See Garner*, 2010 WL 1687832, at *10 (citing *Rodriguez*, 563 F.3d at 966).

1    Significant costs would be expended by both parties should this matter proceed to trial,

2  including expenses for expert witnesses, economic and financial consultants, and many other costs

3  that accompany the trial of a nation-wide class action. (Gray Decl. ¶ 12.) Yet, the added cost and

4  burden of continued litigation would not likely produce better results for the Class. Not only

5  would the relief obtained through continued litigation be substantially similar to the certain relief

6  here, its value would, in effect, be worth less because it would not be realized for many months or

7  years after this Settlement Agreement. (Gray Decl. ¶ 12.) As Plaintiff certainly faced a significant

8  challenge in proving his case on the merits, the complete and prompt relief provided to the Class

9  under the Settlement Agreement balanced against the inherent risk of continued litigation weighs

10  heavily in favor of approval.

11     **D.  The Relief Obtained in the Settlement Agreement Is Substantial**

12    The relief obtained for the Class strongly supports approval. The Settlement Agreement

13  fully cures Plaintiff's and Class members' injuries, and results in complete relief[4]. A high level of

14  recovery offered supports the reasonableness of the Settlement. *See Rodriguez*, 563 F.3d at 963. A

15  settlement recovery is a high level when it represents a substantial portion of the maximum

16  amount plaintiff would have recovered if ultimately successful at trial. *See In re OmniVision*

17  *Techs., Inc.*, 559 F. Supp. 2d at 1042 (holding that a certain recovery at settlement of 6% of the

18  potential trial recovery, after accounting for attorneys' fees and costs, was reasonable and favored

19  approval of the settlement). Thus, when a settlement provides 100% relief, amounting to

20

21  _____

22

23    [4]   Should Plaintiff have ultimately prevailed under his claim brought under the Credit Card
   Accountability Responsibility and Disclosure Act, PL 111-24, 123 Stat 1734 (2009), as it is
24  incorporated into the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq., there is
   a significant chance that the Class would have received substantially less recovery. EFTA limits
25  damages to: the "lessor of $500,00 or 1 per centum of the net worth of the defendant."  15 U.S.C.
   §1693m.  This would have resulted in far less recovery per class member.
26

27

28  Plaintiff's Motion for Final Approval of Class          11          Case No. 11-cv-1785 SI
   Settlement and Class Certification

1  substantially the same relief as the most optimistic potential recovery after years of litigation, it is

2  adequate and fair.

3       This Settlement not only fully compensates all injuries in the over $3,000,000 it makes

4  available to the Class, but it also guarantees that all previously issued Tickets, and those issued in

5  the future, contain lawful periods of expiration. (Dkt. 30-16, ¶ 13 & Dkt. 26-1, § 2.2(a)).

6  Importantly, the relief is guaranteed to the Class because OpenTable is obligated to provide a

7  complete refund if any of its merchant partners fail to honor a Ticket in accordance with the terms

8  of this Settlement. (Dkt. 26-1, §§ 1.22 & 2.2(e)). Given the certain and complete relief obtained

9  for the Class by this Settlement, this factor too favors final approval.

10  **E.  The Extent of Discovery Completed and the Stage of the Litigation**

11       The next factor asks the Court to consider class counsel's familiarity with the case and

12  ability to make informed decisions. *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1042 (citing

13  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459). A compromise based on an understanding of

14  the legal and factual issues with a genuine arms-length negotiation is "presumed fair." *Nat'l Rural*

15  *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see In re Mego Fin.*

16  *Corp. Sec. Litig.*, 213 F.3d at 459 ("[I]n the context of class action settlements, 'formal discovery

17  is not a necessary ticket to the bargaining table' where the parties have sufficient information to

18  make an informed decision about settlement.") (quoting *Linney v. Cellular Alaska P'ship*, 151

19  F.3d 1234, 1239 (9th Cir. 2003)).

20       The Parties' understanding of the case is extremely well-developed. When the Parties

21  appeared before the mediator they were intimately familiar with the applicable case law and were

22  in possession of sufficient information to intelligently negotiate the terms of the instant settlement

23

24

25

26

27

28

to the ultimate benefit of the of the Class.[5] (Gray Decl. ¶ 6.) In the present case, Class Counsel conducted an extensive investigation into the Spotlight Deals Program, spoke with numerous customers, and had a firm grasp of the factual and legal circumstances of the case. (Gray Decl. ¶ 3.) Further, Class Counsel required that OpenTable provide confirmatory discovery concerning the underlying number of Tickets sold, revenue, and the Class. (Gray Decl. ¶ 11.)  Class Counsel's understanding of the case was confirmed by these documents and also by analyzing publicly available financial statements to aid in negotiations, with the assistance of those formally trained in economics. (Gray Decl. ¶ 11.) Class Counsel also was familiar with OpenTable's past practices, the process of redeeming a Ticket, the relationship to restaurants accepting Tickets, and the redemption process going forward. (Gray Decl. ¶ 11.) Accordingly, this factor also favors approval of the Settlement Agreement.

**F.   The Experience and Opinion of Counsel**

Counsel's experience and views about the fairness, adequacy, and reasonableness of the Settlement supports final approval. When plaintiff's and defendant's counsel both support the fairness of a settlement and have significant relevant experience, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *In re OmniVision Techs., Inc.*, 559. F. Supp. 2d at 1043 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). This presumption of reasonableness is predicated on the fact that the "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

---

[5]   The ultimate facts of this case were never in dispute by the parties. The disagreement fell, as discussed above, solely on a legal issue—whether Tickets constituted gift certificates and were governed by gift certificate redemption laws.

Class Counsel regularly engage in major complex litigation and have extensive experience in prosecuting consumer class action lawsuits of similar size and complexity. (Gray Decl. ¶ 1.) Class Counsel have gained a strong understanding of the instant litigation through their investigation, litigation, mediation, negotiations, and the settlement process. (Gray Decl. ¶ 13.) Based on this information, Class Counsel believe the Settlement more than exceeds the "fair, adequate, and reasonable" standard required for the Court's final approval. (Gray Decl. ¶ 13.) Further, OpenTable is represented by one of the country's and the technology industry's most prestigious law firms. (Gray Decl. ¶ 5.) Although vehemently denying any wrongdoing, OpenTable's experienced counsel also agrees that the Settlement Agreement is fair. (Gray Decl. ¶ 13.) Accordingly, the Parties both stand behind the Settlement as a fair and reasonable outcome and the Court should grant final approval. This factor, therefore, also favors the Court's final approval of the Settlement Agreement.

### G. The Presence of a Governmental Participant

Defendant duly notified the United States Attorney General and the required Attorneys General of the respective states of the proposed Settlement, pursuant to Section 1715 of CAFA. *Garner*, 2010 WL 1687832, at *14. "Although CAFA does not create an affirmative duty for either the state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Id.* Defendant timely complied with CAFA's notice requirement and provided the requisite notice on June 30, 2010. (Keough Decl. ¶ 5.) As of the date of filing, no state or federal official has raised any objection to the Settlement Agreement. (Gray Decl. ¶ 15.) Accordingly, this factor favors final approval.

### H. The Reaction of Class Members

The final factor, the reaction of the class members to the Settlement, strongly weighs in favor of granting approval to this Settlement. *Kent v. Hewlett-Packard Co.*, 5:09-CV-05341-JF HRL, 2011 WL 4403717 *2 (N.D. Cal. 2011)). An overwhelming positive response from the

1    Class supports the finding of its fairness, adequacy, and reasonableness. *Id.* (citing *Churchill*

2    *Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir.2004). In *Kent*, twenty-four out of an

3    estimated 45,000 class members (0.0543%) opted out and only eight class members (0.017%)

4    objected. 2011 WL 4403717 *2. The court held that the "positive response from the class

5    weigh[ed] strongly in favor of approving the settlement despite the dissatisfaction of some

6    individuals." *Id.*; *see also Churchill* 361 F.3d at 577 (affirming district court's approval of a

7    settlement agreement with an opt out rate of 0.556% and an objection rate of 0.05%). The

8    Settlement Agreement has received a positive response by the Class and is fair, adequate, and

9    reasonable. [6]

10    In this case, the Court-approved notice procedures were fully implemented by OpenTable

11    and the Court approved notice was sent out to nearly 200,000 unique e-mails possessed by class

12    members. (Keough Decl. ¶ 4.) Out of the entire class, only 3 individuals expressed their objections

13    to the Settlement and only 13 opted out. (Keough Decl. ¶¶ 6-7.) Astonishingly, in a case where

14    direct notice was provided via nearly 200,000 e-mails, that represents an objection rate of

15    approximately .000015% and an opt-out rate of approximately .000065%. The Class's response

16    can only be considered overwhelmingly positive.

17    The documents styled as objections filed by Mr. Ronald Parisi of Reston, Virginia and Ms.

18    Annamarie Molloy of Brookhaven, Pennsylvania were not submitted in accordance with the

19    Court's Order, as Class Counsel was not served with these documents. (Dkt. 29, ¶3) (documents

20    from Ronald Parisi and Annamarie Molloy are attached hereto, respectively, as Exhibit 4 and

21    Exhibit 5) ("Molloy Obj.") ("Parisi Obj.") (Gray Decl. ¶ 15.) Regardless, the substance of both of

22

23    ──────────────────

24

25    [6] Aside from the absence of all, but the most minimal numbers of opt-outs and objections,
Class Counsel has spoke with numerous members of the Class, and all have expressed positive

26    views of the Settlement. (Gray Decl. ¶ 14.)

27

28

1  these documents merely express their objection to any lawsuit against OpenTable concerning

2  expiration dates, not the "fairness, reasonable or adequacy of the Settlement Agreement or the

3  proposed Settlement, or the Incentive Fee Award" as stated in the Order Granting Preliminary

4  Approval of Class Settlement and Class Certification. (Dkt. 29, ¶ 3; Molloy Obj.; Parisi Obj.)

5  These documents take issue with laws that prohibit the expiration of gift certificates, and do not

6  discuss any fault with any aspect of the Settlement. Given that Mr. Parisi's and Ms. Molloy's

7  submissions were not properly served in accordance with the Court's order, and did not take issue

8  with any element of the Settlement, should be given no weight.

9       Lawrence W. Schonbrun recently prepared and filed the objection of Mr. Fred

10  Sondheimer. Mr. Schonbrun is what is known as a "Professional Objector" who attempts to profit

11  by objecting to class action settlements. *Scott v. Blockbuster, Inc.*, D 162-535, 2001 WL 1763966,

12  at **1-3 (Tex. Dist. 2001) ("The Court finds that Mr. Schonbrun makes his living, or attempts to

13  make his living objecting to class action settlements.") The objection filed by Mr. Schonbrun is

14  completely without merit, and will be discussed separately in Plaintiff's Response to Mr.

15  Schonbrun's objection.

16       The lack of any legitimate objections, as minimal in number as they may be, points to the

17  satisfaction obtained for the Class. Accordingly, this and the other factors each favor the Court

18  entering final approval of the Settlement.

19  **V.   CONCLUSION**

20       For the foregoing reasons, Plaintiff respectfully asks that the Court grant final approval to

21  the Settlement Agreement, find that the agreed-upon attorneys' fees and expenses and incentive

22  awards are reasonable, enter the proposed final approval order separately submitted herewith, and

23  grant such further relief the Court deems reasonable and just.

24

25

26

27

28

Dated: December 16, 2011                    Respectfully Submitted,

                                            WILLIAM FARRELL, individually and on
                                            behalf of a class of similarly situated individuals,


                                            /s/ William C. Gray


                                            One of Plaintiff's Attorneys


SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

Jay Edelson (*Pro Hac Vice*)
jedelson@edelson.com
William C. Gray (*Pro Hac Vice*)
wgray@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on December 16, 2011, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: December 16, 2011                                              EDELSON MCGUIRE, LLC

                                                         By:      /s/ William C. Gray
                                                                  William C. Gray