1   SEAN P. REIS (SBN 184004)
    (sreis@edelson.com)
2   EDELSON MCGUIRE LLP
    30021 Tomas Street, Suite 300
3   Rancho Santa Margarita, California 92688
    Telephone: (949) 459-2124
4   Facsimile: (949) 459-2123

5   WILLIAM C. GRAY (Admitted *Pro Hac Vice*)
    (wgray@edelson.com)
6   EDELSON MCGUIRE LLC
    350 North LaSalle, Suite 1300
7   Chicago, Illinois 60654
    Telephone: (312) 589-6370
8   Facsimile: (312) 589-6378

9   *Attorneys for Plaintiff William Farrell and the putative class*

10

11                    **UNITED STATES DISTRICT COURT**

12                    **NORTHERN DISTRICT OF CALIFORNIA**

13   WILLIAM FARRELL, individually and on        Case No. 3:11-cv-01785-SI
     behalf of all others similarly situated,
14                                                [Hon. Susan Illston]
                              Plaintiff,
15                                                **PLAINTIFF'S REPLY IN SUPPORT OF**
     *v.*                                         **FINAL APPROVAL AND RESPONSE TO**
16                                                **OBJECTION OF FRED SONDHEIMER**

17   OPENTABLE, INC., a Delaware
     corporation, d/b/a OpenTable.com,            Date:   January 20, 2012
18                                                Time:  9:00 a.m.
                              Defendant.          Courtroom: 10, 19th Floor
19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT ...................................................................................................3

   A.  All Class Members Benefit From the Settlement Agreement. ................................3

   B.  The Class Representative and Class Counsel Have and Will Continue to Adequately Represent the Class. .........................................................................................4

   C.  The Notice Fairly Informs the Class of the Claims Involved in the Case. ..........................5

   D.  Despite Sondheimer and Schonbrun's Irresponsible Accusations Regarding "Red Flags," the Instant Settlement Was Not the Product of Collusion.............................6

   E.  The Class Notice Comports With Due Process and Any Claimed Deficiencies Misunderstand Applicable Law. ..........................................................................8

      1.  Notice that states you "may" be a class member is entirely proper. ......................8

      2.  The statement in the notice that class members could hire their own attorney is also appropriate........................................................................................9

      3.  The Notice correctly states that the payment of attorneys' fees to Class Counsel will not affect Class Member benefits. ....................................................................10

   F.  Plaintiff's Petition For Reasonable Attorney's Fees Was Timely Filed. ...........................10

   G.  The Objection Procedures Were/Are Proper in This Case. ......................................11

   H  Schonbrun's Requested Modifications Are Inappropriate. ......................................12

III.  CONCLUSION................................................................................................13

1

## <u>TABLE OF AUTHORITIES</u>

2

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

3

*Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989) ........................................................11

4

*Hanlon v Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................................4

5

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).........................................3

6

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) .....................10

7

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir.2004) ...........................................7

8

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................8

9

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)..............................................5

10

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)........................................5

11

*UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.* 352,
      Fed.Appx. 232 (10th Cir. 2009)................................................................................2

12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)..............................................9

13

*Wal-Mart Stores, Inc. v. Buholzer*, 156 Fed. Appx. 346 (2d Cir. 2005)............................1

14

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) .......................................................12

15

*Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194 (9th Cir. 1999) ...................................1, 11

16

**UNITED STATES DISTRICT COURT**

17

*Azizian v. Federated Dept. Stores, Inc.*, C-03-3359 SBA, 2007 WL 425850 (N.D. Cal. 2007) .........9

18

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979).................................................9

19

*Carter v. Anderson Merchandisers,*
      *LP*, EDCV 08-00025-VAPOPX, 2010 WL 144067 (C.D. Cal. 2010) .......................11

20

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ..................................................7

21

*Hughes v. Getronics Wang, LLC*, 07-CV-10356 LAK THK, 2009 WL 6540166 (S.D.N.Y. 2009)...9

22

*In re Cendant Corp. Prides Litig.*, 189 F.R.D. 321 (D.N.J. 1999) ...................................11

23

*In re Connecticut Gen. Life Ins. Co.*, MDL 1136, 1997 WL 910387 (C.D. Cal. 1997) ....................9

24

25

26

27

28

*In re Cypress Semiconductor Securities Litig.*,
   C-92-20048 RPA (PVT), 1995 WL 241434 (N.D. Cal. 1995) ......................................................8

*In re Lifelock, Inc. Marketing & Sales Practices*,
   No. 08–1977–MHM, 2010 WL 3715138 (D.Ariz. 2010) ...........................................................10

*In re TD Ameritrade Account Holder Litig.*,
   C 07–2852 SBA, 2011 WL 4079226 (N.D. Cal. 2011) ...............................................................3

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*,
   No. M:09-CV-2015-JF, 2010 WL 5559767 (N.D. Cal. 2010) ....................................................11

*Misra v. Decision One Mortg. Co.*,
   No. CV 07-0994 DOC (RCx), 2009 WL 4581276 (C.D. Cal. 2009) ..........................................11

*Sandoval v. Tharaldson Employee Mgt.*,
   EDCV 08-00482-VAPOP, 2009 WL 3877203 (C.D. Cal. 2009) ...............................................12

*Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. 2007) ...........................8

*Shaw v. Toshiba Am. Info Sys., Inc.*, 91 F. Supp 2d 942 (E.D. Tex. 2000) ...............................1, 2

*Thieriot v. Celtic Ins. Co.*, C 10-04462 LB, 2011 WL 109636 (N.D. Cal. 2011) ...........................11

*Xiufang Situ v. Leavitt*, 240 F.R.D. 551 (N.D. Cal. 2007) ................................................................3

**STATE COURT CASES**

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 413 (Cal. App. 1st Dist. 2008) ......................................5

*In re California Indirect Purchases*, 960886, 1998 WL 1031494 (Cal. Super. 1998) ......................1

*Lamb v. Wells Fargo Bank, N.A.*, A108354, 2006 WL 925490 (Cal. App. 1st Dist. 2006)...............1

*Scott v. Blockbuster, Inc.*, D 162-535, 2001 WL 1763966 (Tex. Dist. 2001) ..................................1

**STATUTES AND FEDERAL RULES**

15 U.S.C. § 1693m(a)(2)(B)(ii) ..........................................................................................................6

C.D. Cal. Civ. L.R. 6-1 & 7-9 ............................................................................................................10

Cal. Civ. Code § 1749.5(b)(1) ...........................................................................................................3

E.D. Cal. Civ. L.R. 230(b), (c) ..........................................................................................................10

FED. R. CIV. P. 23(h) ........................................................................................................................10

N.D. Cal. Civ. L.R. 7-3 ......................................................................................................................10

S.D. Cal. Civ. L.R. 7.1(e) ............................................................................................. 10

**MISCELLANEOUS**

5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 24.25 (3d ed.1992) .................. 4

Barbara J. Rothstein & Thomas E. Willging*, Managing Class Action Litigation: A Pocket Guide for Judges*, (Federal Judicial Center 2005),
    http://www.fjc.gov/public/pdf.nsf/lookup/classgd3.pdf/$file/classgd3.pdf .................................... 5

*Federal Judicial Center,* Sample Products Liability Class Action Certification and Settlement: Full Notice, *available* at www.fjc.gov ............................................................................................ 9

*See* Letter from David F. Levi, Chair, Advisory Committee on the Federal Rules of Civil Procedure to Hon. Anthony J. Scirica, Chair, Standing Committee on Rules of Practice and Procedure (May 14, 2001),
    http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/CV5-2001.pdf ...................... 5

## I. INTRODUCTION

This Court should overrule Fred Sondheimer's ("Sondheimer") objection to the class action settlement achieved in this case. Sondheimer's objection is actually the product of an on-going collaboration with his attorney, Mr. Lawrence W. Schonbrun ("Schonbrun"), a professional objector who "makes his living, or attempts to make his living objecting to class action settlements." *Scott v. Blockbuster, Inc.*, D 162-535, 2001 WL 1763966, at **1-3 (Tex. Dist. 2001).[1] Courts around the country have found that Schonbrun engages in "gamesmanship," "acts in bad faith", and has gone so far as to "suspiciously manufacture[]" documents relating to his objections. *Id.*; *see also Shaw v. Toshiba Am. Info Sys., Inc.*, 91 F. Supp 2d 942, 975 (E.D. Tex. 2000) (restricting Schonbrun's ability to practice law in Eastern District of Texas due to the lodging of improper objection); *Wal-Mart Stores, Inc. v. Buholzer*, 156 Fed. Appx. 346, 348 (2d Cir. 2005) (unpublished) (describing Schonbrun's arguments as "border[ing] on being frivolous.") In response to one of Schonbrun's "groundless, contrived and misplaced" objections to a class action settlement, the Northern District of California, though overturned on procedural grounds, took the extraordinary step of restricting his right to file objections in certain class actions. *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1196 (9th Cir. 1999) (citing unpublished District Court decision). Calling his conduct "improper," the court stated that Schonbrun's actions demonstrated "a serious lack of professionalism." *Id.*

Regrettably, the duo's objection to the instant settlement is consistent with their previous work. Attempting to leverage frivolous objections in the hopes of getting paid, the Sondheimer objection indicts the settlement with a smattering of supposed offenses: (1) that not all class members will receive a settlement benefit, (2) that Plaintiff Farrell is an inadequate representative, (3) that the settlement papers do not expressly set forth the damages available under the various statutes implicated by this lawsuit, (4) that there are "Red Flags of Self-Dealing," (5) that the

---

[1] This is by no means the first instance where Sondheimer has served as an objector for Schonbrun. *See e.g. Lamb v. Wells Fargo Bank, N.A.*, A108354, 2006 WL 925490 (Cal. App. 1st Dist. 2006) (unpublished) (denying each argument on appeal by Sondheimer, represented by Schonbrun); *In re California Indirect Purchases*, 960886, 1998 WL 1031494, **5-7, *10, n.7 (Cal. Super. 1998) (denying all arguments and stating that Sondheimer, again represented by Schonbrun, made "inconsisten[t,]" "incorrect" and "misguided" arguments with "no support.")

notice is improper, (6) that the attorney fee application was not immediately available for viewing on the date notice was sent to class members, (7) that the objection procedure is faulty for using the word "delivered" and for requiring that objectors verify on oath any facts set forth in their objections, and, finally, (8) that the Court should impose a "reporting requirement" to track the refunds and credits received under the settlement. Given this list, it is surprising Sondheimer and Schonbrun take no issue with the document margins or the fonts used.

Fortunately for the Settlement Class members, none of the issues raised in the Sondheimer objection have merit. Contrary to Schonbrun's arguments, the instant Settlement is a resounding victory for the Class and should be viewed as a making the Class whole for any loss suffered, with more than $3,000,000 of benefits immediately available to the Class. Also, not to be overlooked, the non-monetary aspect of the Settlement is significant because it puts an end to the unlawful practice of using improper expiration dates on OpenTable's vouchers and ensures that all Settlement Class Members receive a benefit under the Settlement. Further, the notice was the best practicable under the circumstances, fully comporting with Rule 23 and Due Process requirements. Simply put, there is no basis to find the notice insufficient because it includes the phrase "you _may_ be a class member" or because it does not state that in certain instances objecting attorneys can apply for attorneys fees. And, the Settlement Class has been provided with ample information to evaluate the Settlement—Schonbrun's suggestion to the contrary is just not based in reality. Ultimately, Sondheimer and Schonbrun don't understand the Settlement because they don't want to.

In the end, Sondheimer's objection, like those lodged by his lawyer in countless other cases, is "general[ly] [] lacking in meaningful analysis, a characterization [Schonbrun] [can]not seriously dispute." _UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp._ 352 Fed.Appx. 232, 237 (10th Cir. 2009); _see Shaw_, 91 F. Supp. 2d at 975 (reprimanding Schonbrun for "manipulation" and "inappropriate litigation conduct" including submitting "documents to this Court which are, at best, negligently created and, at worst, suspiciously manufactured.") For the reasons explained below, the Court should overrule the objection and grant final approval to the Settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   ARGUMENT

### A.   All Class Members Benefit From the Settlement Agreement.

Schonbrun's first objection to the Settlement is based on the incorrect notion that not all members of the Settlement Class benefit from the Settlement. This is simply not the case.

While it is true that only those Settlement Class Members who have yet to use, or unsuccessfully tried to use, their Spotlight Deal vouchers will receive an immediate monetary benefit from having their vouchers honored (thereby saving them the cash value of the vouchers), *all* Settlement Class Members will benefit from the non-monetary component of the Settlement— i.e., the prospective relief prohibiting OpenTable from selling vouchers with impermissible limitations on the period for redemption. One of the primary goals of this lawsuit was to compel OpenTable to change its unlawful practice, which is exactly what the Settlement was able to accomplish.  *See* (Dkt. No. 1, Compl., Prayer for Relief) (requesting the Court grant "such injunctive relief that is necessary to protect the Plaintiff, the Class, and the Subclass"). OpenTable can *never again* issue a voucher with an expiration date shorter than that required by applicable gift card law. (Dkt. 26-1, § 2.2); *see Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 563 (N.D. Cal. 2007) ("class members will benefit from relief which forces the defendant to provide, in the matter required by law, the services to which class members either are currently or at some future point will become entitled") (citation omitted). This is a benefit to everyone, including Sondheimer because, as a member of OpenTable's Spotlight program, any voucher that he has obtained, or will obtain, will never expire.[2] (Dkt. 26-1, §2.1.)

Moreover, the Ninth Circuit has made clear that it is of no moment that different relief may be available to different class members—even no relief to some may be appropriate given the nature of class action settlements. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000) (approving a settlement methodology where class members received different relief, including a large portion who received no recovery); *In re TD Ameritrade Account Holder Litig.*, C 07–2852 SBA, 2011 WL 4079226, at *9 (N.D. Cal. Sept. 13, 2011) ("[a] Settlement is a

---

[2]   The restaurant for which the Sondheimers purchased a voucher for is located in California. Under California law, and the terms of the Settlement Agreement, the voucher will never expire. Cal. Civ. Code § 1749.5(b)(1); (Dkt. 26-1, § 2.2.)

1  *compromise,* which balances the possible recovery against the risks inherent in litigating further.

2  The possibility that the Settlement does not provide for a payout to every conceivable . . . [class

3  member] does not establish that the Settlement is unfair or unreasonable.") (emphasis in original).

4  The first ground for objecting therefore lacks merit.

5  
6  **B.      The Class Representative and Class Counsel Have and Will Continue to Adequately Represent the Class.**

7  Schonbrun next objects to the adequacy of Ferrell to serve as the Class Representative and

8  his attorneys as Class Counsel. This argument is untenable.

9  To determine if representation was in fact adequate, the Court must ask "(1) [did] the

10  named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

11  [did] the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

12  class?" *Hanlon v Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The answer to the first

13  question is a resounding "no" and to the second question is an equally resounding "yes."

14  Schonbrun fails to offer even a scintilla of evidence that there was a conflict of interest between

15  Plaintiff, his counsel, or the Class—nor can he. Further, the relief obtained for the Class evidences

16  vigorous advocacy by Plaintiff and his attorneys, which has resulted in making the Class whole for

17  any damages incurred through the resuscitation of over three million dollars ($3,000,000) worth of

18  OpenTable vouchers. (Dkt. 30-16, ¶13.) In light of the result obtained, there can be no real doubt

19  that the representation was adequate and vigorous.

20  Undeterred, Schonbrun awkwardly reasons that because Sondheimer was apparently able

21  to use the voucher, his interests could not be represented by someone who "did not or was unable

22  to use" their voucher. (Dkt. 31, 2.) This argument is incorrect for several reasons. First, as

23  explained above, Plaintiff and each Settlement Class Member, including Sondheimer, will receive

24  the benefit of the prospective relief prohibiting OpenTable from placing unlawful expiration dates

25  on its vouchers. Thus, the Settlement results in at least one common element of relief for the

26  entirety of the Settlement Class. Second, nothing requires that "the claims of the class

27  representative[s] must be identical or substantially identical to those of the absent class members."

28  5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 24.25 at 24-105 (3d ed.1992).

1    Rather, the test is whether conflicts exist (they do not), and whether the Plaintiff and counsel

2    prosecuted the action vigorously and in the best interests of the Class (they did). Farrell has put the

3    interests of <u>all</u> Class members first, and he and his counsel have vigorously prosecuted the case on

4    behalf of the entire Class. (Dkt. 30, 18.)  Not surprisingly, neither Sondheimer nor Schonbrun

5    offers evidence to the contrary.

6         **C.      The Notice Fairly Informs the Class of the Claims Involved in the Case.**

7         The objection fails to provide any authority supporting the argument that notice must

8    specify "what damages are available to class members under the statutes sued upon." (Dkt. 31, 3.)

9    Schonbrun's argument in this regard is based on a compilation of citations in error to the Report of

10   the Civil Rules Advisory Committee and The Federal Judicial Center's Pocket Guide To Judges.

11   (Dkt. 31, 4, 7.) While these sources lay out what information should be provided to the Court for

12   purposes of fairness evaluation, they *do not* stand for the proposition that the same information

13   needs to be included in the notice disseminated to the class. *See* Letter from David F. Levi, Chair,

14   Advisory Committee on the Federal Rules of Civil Procedure to Hon. Anthony J. Scirica, Chair,

15   Standing Committee on Rules of Practice and Procedure, at 50 (May 14, 2001),

16   http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/CV5-2001.pdf; Barbara J.

17   Rothstein & Thomas E. Willging*, Managing Class Action Litigation: A Pocket Guide for Judges* ,

18   at 9 (Federal Judicial Center 2005),

19   http://www.fjc.gov/public/pdf.nsf/lookup/classgd3.pdf/$file/classgd3.pdf.

20        It is well established that there is no requirement that notice contain an analysis of potential

21   value at trial or a listing of damages. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th

22   Cir. 2009) ("[w]hile the Notice does not . . . analyze the expected value, we do not see why it

23   should"); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (stating that notice

24   fairly apprises the class without "specif[ing] their *potential* recovery") (emphasis added); *Chavez

25   v. Netflix, Inc.*, 162 Cal. App. 4th 413, 426 (Cal. App. 1st Dist. 2008) ("damages claimed by one

26   side in the litigation, which the opposing party hotly contests, does not in any event provide very

27   useful information for evaluating the fairness of the overall settlement, much less for enabling an

28   individual class member to decide whether to opt out."). The content of the notice is thus entirely

1   appropriate.

2       **D.      Despite Sondheimer and Schonbrun's Irresponsible Accusations Regarding**
3           **"Red Flags," the Instant Settlement Was Not the Product of Collusion.**

4           Schonbrun next accuses the Parties of colluding to the ultimate detriment of the Class.

5   Contrary to such conspiracy theories, there was not a hint of collusion in the Parties' negotiations.

6           In this case, the overwhelming value of the Settlement is going to the Class, and the

7   attorneys' fees to be paid to Class Counsel, subject to Court approval, will be separate and apart

8   from the relief secured for the Class. Unlike some questioned distributions, such as in *In re*

9   *Bluetooth Headset Products Liab. Litig.* (*83.2%* of the total value of the settlement in attorneys'

10  fees), the fees requested here are only 14% of the total amount of the Settlement and do not

11  diminish the recovery to the Class *in any way* as they are paid separate and apart from the relief to

12  the Class. 654 F.3d 935, 945 (9th Cir. 2011); (Dkt. 33, 14.) As discussed in Plaintiff's previous

13  filings, the resultant "immediate benefit of over three million dollars ($3,000,000) to consumers,"

14  demonstrates that the Class is receiving the vast distribution of the Settlement. (Dkt. 30, 9.) *See*

15  (Dkt 35-1, ¶ 13) (stating that the Settlement provides "[a] total value of previously expired

16  vouchers now resuscitated for OpenTable's customers [worth] $3,014,000.").

17          The suggestion that the Class is being deprived because purportedly the statutory damages

18  claims of the Class "have been abandoned" (Dkt. 31, 5), is simply inaccurate. The only claim that

19  provides for an award of statutory damages is Plaintiff's claim under the Card Act, which has a

20  damage cap in class actions of $500,000. 15 U.S.C. § 1693m(a)(2)(B)(ii). This amount, spread

21  among the entire Class, would result in a recovery of approximately $2.50 per person. But, it was

22  not feasible to make this part of the Class recovery because the administrative costs alone would

23  subsume this amount. Ultimately, a settlement that does not secure the entirety of the relief

24  potentially available to the class is not grounds for invalidating the deal, because the nature of a

25  settlement is compromise, which often does not result in a 100% recovery for the class. The fact

26  that the instant Settlement results in Class Members being made whole for any loss is indicative of

27  one thing—the strength of the Settlement.

28

1    There has been no evidence of collusion either. (Dkt. 33, 11-14.) The Agreement was

2    signed *before* the Parties negotiated attorneys' fees and contemplated a mechanism for the

3    determination of fees only *after* the Agreement was executed. (Dkt. 26-1, § 6.) The fact that the

4    parties did not negotiate attorneys' fees until after completion of all other terms of the Settlement

5    evidences the non-collusive nature of the Settlement. *See, e.g., Hartless v. Clorox Co.*, 273 F.R.D.

6    630, 641 (S.D. Cal. 2011). Consistent with the executed Agreement, the mediator, a neutral third

7    party, has sworn that the negotiations were "conducted at arms-length," were "hard fought and

8    intense," and that the parties did not negotiate the issue of attorneys' fees until *after* all relief to the

9    class was agreed upon. (Dkt. 33-2, ¶ 12.) Even then, the issue of attorneys' fees was "hotly

10   contested." *Id*.

11    Finally, the provisions in the Agreement regarding OpenTable's agreement not to oppose

12   attorneys' fees up to a certain amount is entirely proper. *In re Bluetooth*, 654 F.3d at 949. As the

13   Settlement Agreement was executed *before* negotiation, let alone determination, on the amount of

14   attorneys' fees, a subsequent agreement by the parties concerning attorneys' fees is appropriate.

15   *Hartless,* 273 F.R.D. at 641; *see In re Bluetooth*, 654 F.3d at 949 (stating that an agreement on

16   attorneys' fees is not prohibited and allows the defendant to understand its maximum exposure).

17   Additionally, though any unawarded fees would revert to the Defendant, Schonbrun's concerns are

18   misplaced because regardless of whether the attorneys' fees are reduced, the recovery to the Class

19   will not be impacted in any way. A blanket assertion that such monies reduce the overall amount

20   of money available to the Class misunderstands OpenTable's financial position and approach to

21   this case. Thus, reversionary funds will not be going to the "putative wrongdoer[]," instead of

22   helping to satiate the harms suffered by the class. *Id*. at 947 (citing *Mirfasihi v. Fleet Mortg.*

23   *Corp.*, 356 F.3d 781, 785 (7th Cir.2004)).

24    As the Class is wholly compensated for any losses incurred, and there is a complete

25   absence of collusion, Schonbrun's baseless charges in this regard should be summarily dismissed.

26

27

28

**E.     The Class Notice Comports With Due Process and Any Claimed Deficiencies Misunderstand Applicable Law.**

Disregarding the need to cite to any relevant legal authority, Schonbrun claims that notice was improper for myriad reasons. Schonbrun is legally and factually mistaken.

**1.      Notice that states you "may" be a class member is entirely proper.**

Schonbrun's contention that notice was defective because it stated that the recipient "may be a member of the Settlement Class" completely misses its mark. (Dkt. 31, 6.) As an initial point, the notice is factually correct. Recipients of notice are never automatically members of the class given that courts only preliminarily approve certification when notice is disseminated and because recipients may opt-put of the Class, per the Court's Order. Further, any person possibly confused by the usage of the word, "may," could look to the simple definition of the Class, which is provided in *two* separate places on the notice. (Dkt. 26-3, 3,4.)

Such language is used regularly in this Circuit. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 638 (9th Cir. 1982) (affirming notice that informed individuals that they "*may* be a member of the plaintiff class") (emphasis added); *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, *124 (N.D. Cal. 2007) (granting approval of notice plan stating that recipient *"may* be a class member"); *In re Cypress Semiconductor Securities Litig.*, C-92-20048 RPA (PVT), 1995 WL 241434, at *2 (N.D. Cal. 1995) (approving notice providing that "YOU ARE HEREBY NOTIFIED that you *may* be a member of the plaintiff class in a pending class action lawsuit") (second emphasis added).

Schonbrun's own filing illustrates the propriety of the language used in the notice. In the OpenTable "Spotlight Credit: Vesu" message attached to the objection, the recipient email address was linsond@pacbell.net, which is likely the email address of the objector's wife, Linda Sondheimer (Dkt. 31, 19.) However, the account is registered to "fred and linda sondheimer [sic]." (Dkt. 31, 18.) But, fksond@pacbell.net was the recipient of the  "Legal Notice of Settlement of Class Action." (Dkt. 31, 14.) It is impossible for OpenTable to know that Fred Sondheimer, and not his wife, is the Class Member. Of course, Sondheimer himself does not indicate in any way that he was confused. (Dkt. 31, ¶ 12.) Instead, Sondheimer clearly states that he "understands [he] [is] a member of a class. . . . ." (Dkt. 31, ¶ 12.) Therefore, the language in the notice was proper

and conforms to Ninth Circuit standards.

### 2.   The statement in the notice that class members could hire their own attorney is also appropriate.

The objection's assertion that the notice was required to include a statement that, under undefined circumstances, attorneys for objectors may be eligible for an award of attorneys' fees, is a nonstarter. While a court *may* award an objector their attorneys' fees, as a matter of law, it is only in the exceptional occasion when an objector "substantially enhance[s] the benefits to the class." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002); *see Azizian v. Federated Dept. Stores, Inc.*, C-03-3359 SBA, 2007 WL 425850, at *1 (N.D. Cal. 2007) (denying objector's request for attorneys' fees because the efforts of the objectors "did not substantially enhance the value of the settlement or benefit the class sufficiently.") There is no blanket rule that objector's counsel, solely by lodging an objection (and a frivolous one no less), is entitled to recover attorneys' fees.

Given that contrary language could mislead a class member into thinking that the defendant would be responsible for incurred legal bills, courts routinely include virtually identical language in approved notices. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616 n.6 (N.D. Cal. 1979) (approving notice language stating that "[y]ou are entitled to have your attorney present at this hearing at your expense"); *In re Connecticut Gen. Life Ins. Co.*, MDL 1136, 1997 WL 910387, at *17 (C.D. Cal. 1997) (ordering notice to state that "Class Members may [object] either on their own or through an attorney hired at their own expense"); *see also Hughes v. Getronics Wang, LLC*, 07-CV-10356 LAK THK, 2009 WL 6540166, at *6 (S.D.N.Y. 2009) (approving notice declaring "[i]f you want to be represented by your own lawyer, you may hire one at your own expense"); *Federal Judicial Center,* Sample Products Liability Class Action Certification and Settlement: Full Notice at p. 8, *available* at www.fjc.gov ("If you want to be represented by your own lawyer, you may hire one at your own expense.").

No Class Member, including Sondheimer, has claimed to be confused, most likely because it isn't confusing. It is therefore of no moment that the notice does not indicate that attorneys fees for objecting attorneys are theoretically possible.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3. The Notice correctly states that the payment of attorneys' fees to Class Counsel will not affect Class Member benefits.

Schonbrun's contention that the payment of attorneys' fees to Class Counsel affects the benefits to the Class falls flat. The Agreement allows each Class Member to recover any and all actual damages that they suffered. As explained above, in no way does the payment of attorneys' fees affect the amount or manner of relief available to the Class. (Dkt. 26-1, § 2.1); (*see* Dkt. 33, 8) ("OpenTable has agreed to pay … attorneys' fees and the reimbursement of costs *on top of the benefits provided to the Class*") (emphasis added). The language used in the notice was therefore entirely accurate.

### F. Plaintiff's Petition For Reasonable Attorney's Fees Was Timely Filed.

Sondheim and Schonbrun next contend that Plaintiff's fee petition was untimely filed. (Dkt. No. 31 at 8.) Plaintiff's fee petition was filed timely and the objection can offer no authority in support of the position. Rule 23 only requires that an application for attorneys' fees be filed on the date mandated by the court, as long as that date precedes the deadline for objections. FED. R. CIV. P. 23(h); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010); *cf In re Lifelock, Inc. Marketing & Sales Practices,* No. 08–1977–MHM, 2010 WL 3715138, at *9 (D.Ariz. 2010) (finding that the requirement that fee petitions be filed before the objection deadline is not applicable in cases where attorneys' fees do not deplete class relief).

The timing of the filing of Plaintiff's fee petition was entirely proper. As required in the Court's Preliminary Approval Order, Plaintiff filed his fee petition on November 28, 2011. (Dkt. No. 29 at 4-5.) Under the timeline correctly set by the Court, the Class had sufficient time—two weeks in fact—to review Plaintiff's filing before the close of the objection period. The Court's deadline was further consistent with the time by which a party must respond to a motion under this Court's Local Civil Rules. N.D. Cal. Civ. L.R. 7-3 (14-day response time); *see also* C.D. Cal. Civ. L.R. 6-1 & 7-9 (7-day response time); E.D. Cal. Civ. L.R. 230(b), (c) (14-day response time); S.D. Cal. Civ. L.R. 7.1(e) (14-day response time). Accordingly, under all applicable law, rules, and the Court's schedule, Plaintiff's filing was appropriate and allowed sufficient time "to enable potential objectors to examine the [attorneys' fee] motion." *Mercury Interactive*, 618 F.3d at 994 (internal citation omitted).

**G.     The Objection Procedures Were/Are Proper in This Case.**

Schonbrun is undoubtedly aware that his objection to requiring Class Members to verify their membership in the Class when objecting is without merit.[3] The Court provided that only Class Members have the right to object to a class action settlement. (Dkt. 29, 2-3.) Courts routinely require verification of standing so that individuals, or their attorneys, do not attempt to obstruct settlements when they are not even members of the class. *See, e.g.*, *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.,* No. M:09-CV-2015-JF, 2010 WL 5559767, at *5 (N.D. Cal. 2010) (requiring objectors to confirm status under penalty of perjury); *Misra v. Decision One Mortg. Co.*, No. CV 07-0994 DOC (RCx), 2009 WL 4581276, at *10 (C.D. Cal. 2009) (requiring objector to include a statement signed under penalty of perjury). Requiring verification of class member status prevents wasteful usage of resources responding to meritless objections. S*an Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989)). Further, the verification procedure in this case merely required a signature as opposed to a notarized statement. *Mangone*, 206 F.R.D. at 235 (holding that requiring signature of a class member was "hardly burdensome"); *see In re Cendant Corp. Prides Litig.*, 189 F.R.D. 321, 328 (D.N.J. 1999) (requiring certification is proper to ensure that "each claimant is truly a member of the settlement class.").

Nor was there anything improper about tying the delivery date of objections to the postmark date. This follows the routine practice of court-approved settlements in the Ninth Circuit. *See Thieriot v. Celtic Ins. Co.*, C 10-04462 LB, 2011 WL 109636, at *7 (N.D. Cal. 2011) (approving schedule requiring objections to be postmarked by a certain date); *Carter v. Anderson Merchandisers, LP*, EDCV 08-00025-VAPOPX, 2010 WL 144067, at *13 (C.D. Cal. 2010) (approving schedule requiring objections to be postmarked by a certain date); *Sandoval v. Tharaldson Employee Mgt.*, EDCV 08-00482-VAPOP, 2009 WL 3877203, at *12 (C.D. Cal.

---

[3]     In *Weissman*, the case reviewing the district court's restriction on Schonbrun's ability to file objections in the Northern District, the court found that "in many other cases where Schonbrun appeared on behalf of objectors to class action settlements, courts found his intervention to be improper because his purported clients lacked standing as class members." 179 F.3d at 1196.

2009) (approving schedule requiring objections to be postmarked by a certain date).

Further, the definition of "deliver" was contained in the Preliminary Approval Order and Settlement, with both documents available to Class Members on the official settlement website. *See* (Dkt. 26-4, 3) ("For complete information about the Settlement, to view the Settlement Agreement and related Court documents, please visit www.[farrellsettlement].com … ."); *see Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982) ("[Class Members] who wanted to probe more deeply could, as the notice plainly told them, examine the settlement stipulation and the papers and documents filed in this action.") (quotations omitted). Thus, Schonbrun cannot seriously claim any confusion about the language of the notice as it relates to delivery of objections from him or any other class member.

**H.      Schonbrun's Requested Modifications Are Inappropriate.**

The objection asks the Court to require that the parties report the number of Class Members who receive a refund, credit, or new voucher from OpenTable before granting final approval. (Dkt. 31, 9.) Once again, Sondheimer and Schonbrun confuse the nature of the suit and Settlement.

Under the Settlement, OpenTable is contractually required to mandate that its restaurant partners honor all vouchers issued by OpenTable in accordance with the gift card laws of the restaurant's state. (Dkt. 26-1, § 2.2.) Thus, the more successful the Settlement, the fewer the credits, refunds, or new vouchers that will have to be issued. Schonbrun's request, aside from providing no meaningful information, would vitiate one of the main benefits to the Class—ease of use of their previously expired vouchers. Class Members do not need to do anything to receive the relief, except use their vouchers as they see fit. OpenTable is the party required to take action by mandating that all of its partner restaurants accept the vouchers, no matter the listed expiration date. (Dkt. 26-1, § 2.1.) Additionally, in California, and other states where gift certificates can never expire, a consumer in twenty years could attempt to use a voucher, and if refused, be issued a credit under the Settlement. The entire purpose of this litigation is to ensure that consumers have the necessary and lawful time to enjoy their vouchers.

1    Sondheimer and Schonbrun incorrectly state that it "is only with this information that the

2    Court can determine whether Class Counsel and the Representative Plaintiff are receiving a

3    disproportionate distribution of settlement benefits." (Dkt. 31, 9.) Without further belaboring the

4    point, Schonbrun does not understand that this is not a Settlement where Class Counsel takes its

5    fees as a percentage of the money made available to the Class. Instead, as discussed *supra*, and in

6    the Settlement Agreement, Motion for Preliminary Approval, Fee Petition, and Motion for Final

7    Approval, the requested attorneys' fees and incentive award *in no way* affect the relief to the

8    Class. (Dkt. 26, 7; Dkt. 26-1, § 6.1; Dkt. 30, 8-9; Dkt. 33, 6-9.) Upon final approval, the Class is

9    automatically made whole by the resuscitation of over three million dollars ($3,000,000) worth of

10   OpenTable vouchers that had previously expired or would have expired in the very near future.

11   (Dkt. 33, 7.) The relief, making the Class completely whole for any loss suffered, is unaffected by

12   the awarding of attorneys' fees and incentive award. Schonbrun's objection should therefore be

13   overruled.

14   **III.    CONCLUSION**

15        For the foregoing reasons, Plaintiff respectfully asks that the Court overrule the

16   Sondheimer Objection, grant final approval to the Settlement Agreement, find that the agreed-

17   upon attorneys' fees and expenses and incentive awards are reasonable, enter the proposed final

18   approval order previously submitted, and grant such further relief the Court deems reasonable and

19   just.

20   Dated: January 06, 2012                    Respectfully Submitted,

21                                              WILLIAM FARRELL, individually and on
                                                behalf of a class of similarly situated individuals,
22

23

24                                             By: /s/ William C. Gray
                                                   One of Plaintiff's Attorneys

25   WILLIAM C. GRAY (Admitted *Pro Hac Vice*)
     (wgray@edelson.com)
26   EDELSON MCGUIRE LLC
     350 North LaSalle, Suite 1300
27   Chicago, Illinois 60654
     Telephone: (312) 589-6370
28   Facsimile: (312) 589-6378

SEAN P. REIS (SBN 184004)
(sreis@edelson.com)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

*Attorneys for Plaintiff William Farrell and the putative class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned certifies that, on January 06, 2012, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: January 06, 2012

/s/ William C. Gray